**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---------------------------------------------------------------------X

EMANUEL STRONG,

Plaintiff,

-against-

THE CITY OF NEW YORK, *et al.*,

Defendants.

---------------------------------------------------------------------X

**24 Civ. 2315 (JPC) (GS)**

**REPORT & RECOMMENDATION**

**GARY STEIN, United States Magistrate Judge:**

Plaintiff Emanuel Strong ("Plaintiff" or "Strong"), proceeding *pro se*, brings this action against the City of New York (the "City") and several individual Defendants employed by the New York City Department of Correction ("DOC") in their official and individual capacities (collectively, "Defendants"), asserting violations of his constitutional, statutory, and common law rights under federal and New York law. Defendants have moved to dismiss Plaintiff's claims against them pursuant to Federal Rule of Civil Procedure 12(b)(6). (Dkt. No. 47).

For the reasons set forth below, the undersigned respectfully recommends that Defendants' motion be **GRANTED IN PART and DENIED IN PART**.[1] Specifically, the undersigned recommends that Defendants' motion be **DENIED** as to Plaintiff's claims against the City for disability discrimination, retaliation, and hostile work environment under the Americans with Disabilities Act ("ADA"); as to

[1] On April 26, 2024, the Hon. John P. Cronan referred this matter to the undersigned for general pretrial supervision and dispositive motions requiring a report and recommendation. (Dkt. Entry dated April 26, 2024).

Plaintiff's claims for discrimination under New York Executive Law § 296 ("NYSHRL") and New York City Administrative Code § 8-107 ("NYCHRL"); and as to Plaintiff's claim against the City for retaliation under New York Civil Service Law § 75-b. The undersigned further recommends that Defendants' motion be **GRANTED** as to the remainder of Plaintiff's claims, and as to Plaintiff's claims under the ADA and Civil Service Law § 75-b against all individual Defendants.

## BACKGROUND

### A. Plaintiff's Allegations

The following facts are drawn from Plaintiff's Second Amended Complaint (Dkt. No. 37, "SAC") and taken as true for purposes of this Report & Recommendation. *See Horn v. Stephenson*, 11 F.4th 163, 166 (2d Cir. 2021).

The events underlying the SAC relate to incidents that occurred primarily between May 2022 and January 2024 while Plaintiff was employed as a corrections officer at the George R. Vierno Center ("GRVC") on Rikers Island. He brings claims against the City, as well as the following nine individual Defendants employed by the DOC: Lynelle Maginley-Liddie ("Maginley-Liddie"), the DOC Commissioner since December 8, 2023; Louis A. Molina ("Molina"), the DOC Commissioner between January 1, 2022 and December 8, 2023; Solange Grey ("Grey"), the DOC's Deputy Commissioner of the Trials and Litigation Division; Elizabeth Lundi ("Lundi"), the DOC's Office of Equal Employment Opportunity assistant commissioner; Antoinette Cort ("Cort"), GRVC's assistant commissioner; Elyn

Rivera ("Rivera"), a deputy warden at GRVC; George Gustuve ("Gustuve"), an assistant deputy warden at GRVC between July and August 2023, and a captain prior to November 2022; Naheim Stokes ("Stokes"), an assistant deputy warden at GRVC; and Dymita Harper ("Harper"), a captain at GRVC. (*See* SAC ¶¶ 9–17).

Strong began working for DOC in January 2008 and, at all times, was assigned to GRVC. (*Id.* ¶¶ 18–19). On December 28, 2020, Strong was assaulted by an inmate at GRVC. (*Id.* ¶¶ 44–46). The inmate lifted Strong off the ground and "slammed [him] to the floor," requiring Strong to be treated in the emergency room for numerous contusions and herniations. (*Id.*). Following the assault, he experienced "mental distress with physical manifestations and panic attacks," which required leave for mental health treatment between August 2021 and May 2022. (*Id.* ¶ 67).[2]

Around the time when he was on leave, Plaintiff alleges that there was a policy change at the DOC. Specifically, Strong claims that Commissioner Molina and his administration "falsely documented several full-duty posts, assignments and/or official duties as light-duty labor and/or posts." (*See id.* ¶ 33). Light-duty posts, Strong explains, are a way that the DOC provides "reasonable accommodations" pursuant to the ADA. (*Id.* ¶ 30). Strong alleges that prior to

[2] Strong also alleges that between January and June 2021, DOC employees "willful[y] delay[ed]" processing his workers compensation application in connection with the 2020 assault. (*See id.* ¶¶ 48–62). Strong alleges he made several complaints to supervisors, including Defendants Molina and Gustuve, about the "willful delay" and supervisors' "failure to supervise and intervene" in the situation. (*Id.* ¶ 62).

January 2022, no DOC officers "assigned light-duty were forced to work full-duty posts or to care, control and supervise incarcerated persons." (*Id.* ¶ 32). Starting around May 2022, however, Molina authorized Cort, Rivera, Gustuve, Stokes and Harper "to schedule [Strong] and other light-duty officers to work full-duty posts[] that supervise the care, custody[,] and control of incarcerated individuals." (*Id.* ¶ 34).

In May 2022, the DOC's Health Management Division's ("HMD") psychologist cleared Strong to return to work with "light-duty status reasonable accommodations," with specific instructions "[n]o inmate supervision" until June 22, 2022. (*Id.* ¶ 68).[3] Despite the accommodation, Plaintiff alleges that he was "forced" to work full-duty posts with responsibility for the care of incarcerated individuals, including on June 20, 2022. (*Id.* ¶¶ 69–70). That day, inmate Anibal Carrasquillo ("Carrasquillo") was "found unresponsive" by other officers on Strong's shift, and passed away the same day. (*Id.* ¶ 71). The next day, Strong and two other officers were suspended for 30 days without salary because of Carrasquillo's death. (*Id.* ¶ 72). Strong unsuccessfully appealed the suspension. (*Id.* ¶ 73).[4]

Upon returning from his suspension, Plaintiff experienced "mental distress, physical manifestations and panic attacks." (*Id.* ¶ 75). He then contracted shingles

---

[3] HMD employs "physicians and psychiatric practitioners[]" who "review, confirm, and validate the treatment of officer patients[]" and "determine the duty status of the officer." (*Id.* ¶ 29).

[4] Several months later, on May 8, 2023, Strong received a "formal disciplinary complaint . . . that wrongfully charged him [] with negligence" related to Carrasquillo's death. (*Id.* ¶ 74).

in August 2022 and, in late September 2022, "suffered from the severe effects of Crohn's disease and required hospitalization and medication." (*Id.* ¶ 75). As a result, in early October 2022, an HMD physician assigned Strong to "light-duty status" with specific instructions that he have "no inmate supervision" and be "close to [a] bathroom." (*Id.* ¶ 76).

Nonetheless, that same month, "superior officers changed [Strong's] tour" and assigned him to "high classification housing areas" with "assaultive inmates." (*Id.* ¶ 77). Throughout this period, Strong made "several verbal and written grievances" to Cort, Rivera, Gustuve, and Harper, stating that the "enforcement of full-duty high classification posts . . . disregarded his light-duty status, reasonable accommodations and the safety of himself, other staff and inmates," as well as requests to HMD, "Personnel" and Cort for "a temporary duty station." (*Id.* ¶¶ 78–79). His grievances were "disregarded," and Defendants continued assigning him to full-duty posts with "high classification and assaultive inmates and overtime." (*Id.* ¶ 80).

Eventually, between November 2022 and January 2023, Strong started refusing Cort, Rivera, and Harper's commands to work full-duty posts "on several occasions," which resulted in "verbal and mental abuse against him," a "disciplinary action" in December 2022, and ultimately, a five-day suspension without salary

issued by Rivera and Harper on January 4, 2023.[5] (*Id.* ¶¶ 81–84, 86–87). Strong unsuccessfully appealed the suspension. (*Id.* ¶ 88).

Next, in early January 2023, Strong alleges that Cort "contacted HMD" and ordered an HMD physician to "change his reasonable accommodations [] to approve a full-duty post." (*Id.* ¶ 89). When Strong returned to work from suspension, the physician told Strong that "superior officers of GRVC demanded that she change [his] reasonable accommodations" to place Strong on a full-duty post. (*Id.* ¶ 90).

A few months later, on April 16, 2023, while staffed on a post in a housing area, Strong was assaulted by an inmate, and was "unable to utilize[] . . . chemical agents to subdue [the inmate]" because light-duty officers are not allowed to be recertified to use that tool. (*Id.* ¶¶ 92, 95–96). The assault caused multiple "contusions," a fractured rib, and "emotional distress," and left Strong unable to work until May 8, 2023. (*Id.* ¶¶ 97–98, 100). Strong also alleges that, after the assault, he "experienced multiple and frequent panic attacks" (*id.* ¶ 150; *see also id.* ¶¶ 153–55, 157) and ultimately started treatment for "anxiety disorder and overreactive physical state." (*Id.* ¶ 160). When he returned to work, he received accommodations from an HMD physician to work "only [an] administrative post" with "[n]o duty vest." (*Id.* ¶ 98).

---

[5] The SAC states that the suspension was issued on "January 4, 2022" (SAC ¶ 86), but the chronological narrative in the SAC and the surrounding allegations suggest that this was a typographical error. (*See* SAC ¶¶ 85, 88).

Strong alleges that after returning, he continued refusing commands to work in full-duty posts because of his light-duty status and lack of protective equipment. (*Id.* ¶ 100). On July 19, 2023, Defendant Stokes ordered him to work a full-duty post, despite "acknowledg[ing]" his light-duty status, and Strong refused his commands. (*Id.* ¶ 102–04). After refusing, he "wrote an explanation for his refusal of [the] orders," claiming they were unlawful under the ADA. (*Id.* ¶ 104). Stokes suspended Strong without pay for a week for refusing his orders. (*Id.* ¶ 105).

In a similar incident a week and a half later, Strong refused Gustuve's orders to work the full-duty post where Strong was last assaulted despite acknowledging his light-duty status and lack of physical protection. (*Id.* ¶¶ 107–09). After refusing, Strong alleges that Gustuve shouted "only pregnant officers will not be forced to work within the jail," and that Gustuve would order Strong to work that post every day, and suspend him if he refused. (*Id.* ¶ 110). Again, Strong "wrote an explanation" that he refused Gustuve's orders due to his ADA rights, but was ultimately suspended for 14 days without pay. (*Id.* ¶¶ 113–14).

On August 9, 2023, Strong filed a complaint with the United States Equal Employment Opportunity Commission ("EEOC"). (*Id.* ¶ 136). On September 18, 2023 Strong received "formal disciplinary charges" from Grey, dated August 29, 2023, that consisted of eight counts for "failure to obey orders to work the full-duty post." (*Id.* ¶ 116). In an Answer responding to those charges, Strong stated that

having disabled officers work posts supervising inmates, and his disciplinary charges, violated the ADA and New York law. (*Id.* ¶ 117).

Strong also alleges a separate pattern of misconduct at GRVC involving "coercion and/or willful imprisonment" stemming from forced overtime and double tours without pay. (*See id.* ¶¶ 120, 122). He alleges that on "several occasions," Gustuve and Harper "ordered officers to deny egress of [the] gates to him" for refusing to work overtime and demanding to leave the facility after completing his tour. (*Id.* ¶ 140). Strong alleges that Gustuve and Harper ordered officers "to imprison him and other officers," stating "don't open that gate for him/her," "don't let him/her leave," and "don't let him/her out," enforced "by threat of formal disciplinary action supervised by" Grey. (*Id.* ¶ 141).

In late September and October 2023, Strong "sent notices" to the City, Molina, Lundi, and Cort to "cease the coercion and/or willful imprisonment to enforce excessive overtime [and] double tours . . . and explained the dangers, harm safety, and degradation of health to the staff, officers, inmates, and public." (*Id.* ¶ 120). Nonetheless, the practices continued "after November 2023." (*Id.* ¶ 142).

Eventually, Strong submitted time-due forms for each day he was forced to work a double tour (*id.* ¶ 143), but around January 15, 2024, Harper told Strong that she terminated his time-due submissions and planned to terminate all future submissions. (*Id.* ¶ 147). Harper also stated that Strong would be scheduled to double tours every day, that "doctor's appointments must be scheduled on [his] pass

days," that he would be "forced to work every tour scheduled," and that he would have "the worst posts guaranteed." (*Id.*). Harper's threats caused Strong "mental distress to the point of resignation." (*Id.* ¶ 148).

**B. Procedural History**

Strong began this action on March 27, 2024 with the filing of a Complaint against the City, DOC, Lundi, Cort, Rivera, Gustuve, Stokes, and Harper. (*See* Dkt. No. 1).[6] Before Defendants answered or responded to the first complaint, Plaintiff submitted a motion to add Maginley-Liddie and Grey as individual defendants on July 16, 2024 (Dkt. No. 16), then filed an amended complaint on July 26, 2024, adding 15 new causes of action and significantly amplifying his factual allegations. (Dkt. No. 17).

On August 16, 2024, again without any intervening submissions from Defendants, Strong submitted a motion for leave to amend his complaint a second time and attached the proposed complaint. (Dkt. No. 19). His proposed amendments included: correcting the case caption to sue the individual Defendants in their individual capacities; adding Maginley-Liddie, Grey, and now Molina as Defendants; correcting typographical errors; and including new factual allegations. (*Id.* at 2–4).

[6] On June 12, 2024, Judge Cronan dismissed all claims against the DOC because "[a]n agency of the City of New York cannot be sued." (Dkt. No. 14).

On August 19, 2024, the Office of the Corporation Counsel ("Corporation Counsel"), appearing on behalf of the City, requested an extension of time to respond to Plaintiff's complaint without addressing whether they consented to Strong's second amended complaint. (Dkt. No. 20). On August 22, 2024, the undersigned issued an Order denying Plaintiff's July 16 motion as moot, directing the Clerk of Court to strike Plaintiff's first amended complaint, and directing Corporation Counsel to inform the Court whether they consented to Plaintiff filing his second amended complaint. (Dkt. No. 21). Corporation Counsel consented to Strong filing the second amended complaint and requested until October 11, 2024 to respond to that complaint. (Dkt. No. 24). The undersigned granted that request. (Dkt. No. 26).

In the meantime, Strong had been seeking a default judgment against the City and certain individual Defendants based on their failure to respond to the first amended complaint, and on August 24, 2024, he filed a letter objecting to the Court's August 22, 2024 Order insofar as it struck the first amended complaint. (Dkt. Nos. 23, 25). On September 23, 2024, Strong filed an interlocutory appeal from the Court's August 22, 2024 Order (Dkt. No. 28), and at the City's request, the Court stayed the action pending appeal. (Dkt. No. 31). The appeal was dismissed for lack of jurisdiction on February 14, 2025. (Dkt. No. 35).

After Strong's appeal was dismissed, the undersigned issued an order on March 19, 2025 that, *inter alia*, lifted the stay, docketed Plaintiff's proposed second

amended complaint, and requested that Corporation Counsel "waive service on behalf of the individuals named in the Second Amended Complaint" (Dkt. No. 36 at 5–6). The Order also requested Corporation Counsel to "inform the Court . . . if it will be representing the individual Defendants in this action." (*Id.* at 6).[7]

On May 19, 2025, Corporation Counsel submitted a letter stating that it will represent Maginley-Liddey, Molina, Grey, Rivera, and Harper in this action. (Dkt. No. 42). However, DOC was unable to contact Lundi, Stokes, Cort, and Gustuve, as those individuals had "either retired[,] separated from the DOC, or [were] on medical leave with no return date." (*Id.*). Corporate Counsel thus could not, at that time, determine whether it would represent those individuals or waive service on their behalf. (*Id.*).

Ultimately, on October 10, 2025, Corporate Counsel requested that the undersigned set a briefing schedule for Defendants' motion to dismiss, which the Court granted a week later. (Dkt. Nos. 45–46). On December 8, 2025, Defendants filed their memorandum of law in support of their motion to dismiss (Dkt. No. 47 ("Mot.")).[8] Strong did not submit an opposition brief.

---

[7] The March 19, 2025 Order also rejected Plaintiff's request to reinstate the first amended complaint and further denied Plaintiff's request for entry of a default judgment. (*Id.* at 4–5).

[8] Exactly which individual Defendants are being represented by Corporation Counsel on this motion is unclear. No attorney from Corporation Counsel has filed a notice of appearance on the docket specifying which Defendants are represented. Nor did Corporation Counsel file a notice of motion in connection with the motion to dismiss, as required by Local Civil Rule 7.1(a)(1). As noted above, as of their May 19, 2025 letter, Corporation Counsel was representing only the City and five of the individual Defendants (Maginley-Liddey, Molina, Grey, Rivera, and Harper). (Dkt. No. 42). However, the motion to dismiss describes Corporation Counsel as "Attorney for Defendants" and defines "Defendants" to include the City and all nine individual Defendants, including Lundi, Stokes, Cort, and Gustuve. (Mot. at 1, 23).

The SAC alleges the following causes of action against the City and some combination of individual Defendants: (1) retaliation under the First Amendment; (2)–(8) "willful imprisonment," disability discrimination, retaliation, hostile work environment, failure to intervene, failure to supervise, and a *Monell* claim under 42 U.S.C. § 1983 ("Section 1983"); (9)–(10) disability discrimination and retaliation under the ADA; (11) disability discrimination under the NYSHRL; (12) "unjust enrichment" in violation of New York General Municipal Law § 207-c; (13)–(14) violations of New York Labor Law §§ 162 & 168; (15) "unjust enrichment" in violation of New York Labor Law § 193; (16) "unjust enrichment" in violation of New York Civil Service Law § 75; (17) retaliation under New York Civil Service Law § 75-b; (18) disability discrimination under the NYCHRL; and (19) defamation and libel.

---

The Court would be justified in deeming that filing as an appearance on behalf of all nine individual Defendants as well as the City. *See Trabacchi v. Dep't of Educ.*, No. 24 Civ. 6123 (RPK) (TAM), 2025 WL 2922708, at *1 & n.1 (E.D.N.Y. July 31, 2025) (analyzing claims against New York Department of Education ("DOE") and individual defendants despite counsel only appearing for the DOE because "the motion to dismiss was filed on behalf of all Defendants"); *Beard v. Mason*, No. 1:24-CV-433(JLS-MJR), 2025 WL 3647569, at *13 (W.D.N.Y. Aug. 20, 2025) (finding that State Attorney General filing motion to dismiss "constituted formal appearance of the Office of the State Attorney General on behalf of the State Defendants"), *R&R adopted*, 2025 WL 3643842 (W.D.N.Y. Nov. 18, 2025). The Court is reluctant to do so, however, given (1) Corporation Counsel's statement in the May 19, 2025 letter that Lundi, Stokes, Cort, and Gustuve had not yet been contacted and hence had not consented to being represented by Corporation Counsel; and (2) the absence of any affirmative indication (other than what may be inferred from the motion itself) that these four defendants gave their consent.

The Court thus will assume for purposes of this Report & Recommendation that the term "Defendants" includes the City and Maginley-Liddey, Molina, Grey, Rivera, and Harper only. As a practical matter, whether this motion is made on behalf of only those individual Defendants or on behalf of all the individual Defendants does not affect the analysis herein.

## LEGAL STANDARDS

Under Fed. R. Civ. P. 12(b)(6), a complaint may be dismissed for "failure to state a claim upon which relief can be granted." "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 554, 570 (2007)). A claim is plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* The factual allegations "must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555; *see also Iqbal*, 556 U.S. at 678 (complaint must raise "more than a sheer possibility that a defendant has acted unlawfully").

In considering a motion to dismiss under Rule 12(b)(6), the Court must "accept[] all factual allegations in the complaint as true" and "draw[] all reasonable inferences in the plaintiff's favor." *Palin v. New York Times Co.*, 940 F.3d 804, 809 (2d Cir. 2019) (citation omitted). Courts need not, however, consider "conclusory allegations or legal conclusions couched as factual allegations." *Dixon v. von Blanckensee*, 994 F.3d 95, 101 (2d Cir. 2021) (citation omitted); *see also Iqbal*, 556 U.S. at 678 ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.").

Determining whether a plausible claim has been pled is "a context-specific task" that requires the court "to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679; *see Herrera v. Comme des Garcons, Ltd.*, 84 F.4th 110, 113 (2d Cir. 2023). However, "Rule 12(b)(6) does not countenance . . . dismissals based on a judge's disbelief of a complaint's factual allegations." *Twombly*, 550 U.S. at 556 (citation omitted). "[T]he court's task is to assess the legal feasibility of the complaint; it is not to assess the weight of the evidence that might be offered on either side." *Lynch v. City of New York*, 952 F.3d 67, 75 (2d Cir. 2020).

*Pro se* complaints, "however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (cleaned up). The court must therefore "read the pleadings of a *pro se* plaintiff liberally" and construe them to raise "the strongest arguments that they suggest." *McPherson v. Coombe*, 174 F.3d 276, 280 (2d Cir. 1999) (citation omitted). However, *pro se* complaints must still "contain factual allegations sufficient to raise a 'right to relief above the speculative level.'" *Dawkins v. Gonyea,* 646 F. Supp. 2d 594, 603 (S.D.N.Y. 2009) (quoting *Twombly*, 550 U.S. at 555).

A plaintiff's failure to oppose a motion to dismiss "cannot itself justify dismissal of a complaint," as "'the sufficiency of a complaint is a matter of law that the court is capable of determining based on its own reading of the pleading and knowledge of the law.'" *Haas v. Commerce Bank*, 497 F. Supp. 2d 563, 564 (S.D.N.Y. 2007) (quoting *McCall v. Pataki*, 232 F.3d 321, 322–23 (2d Cir. 2000)).

## DISCUSSION

The 19 causes of action asserted in the SAC may be grouped into the following categories: eight claims for violation of Plaintiff's constitutional rights under 42 U.S.C. § 1983; four disability-related claims brought under the ADA, the NYSHRL, and the NYHCRL, and seven other claims arising under various New York statutes and the common law. Defendants move to dismiss all 19 of Plaintiff's causes of action for failure to state a claim.[9]

### A. Claims Under 42 U.S.C. § 1983

Strong asserts claims under Section 1983 against all Defendants for violation of his First Amendment rights,[10] willful imprisonment, disability discrimination, retaliation, and hostile work environment (Counts I through V). Strong also brings failure to supervise and failure to intervene claims against the City (Counts VII and VIII). Lastly, Plaintiff brings a *Monell* claim against all Defendants (Count VI).

[9] Although Defendants' brief argues that certain of Plaintiff's statutory claims must be dismissed as to all individual Defendants because the relevant statutes do not allow for individual liability, it makes no attempt to argue that any claims should be dismissed as to particular individual Defendants even if the claim survives as to the City or other individual Defendants. Accordingly, the Court's analysis likewise does not differentiate between or among the different individual Defendants. *Goodwine v. City of New York*, No. 15 Civ. 2868 (JMF), 2016 WL 3017398, at *5 n.2 (S.D.N.Y. May 23, 2016) ("[B]ecause Defendants only move to dismiss Plaintiff's claims in their entirety and do not differentiate among the Individual Defendants, the Court declines to parse Plaintiff's Complaint to determine if her claims should be dismissed as to some Individual Defendants").

[10] Strong does not explicitly bring his claim for violation of his First Amendment rights under Section 1983. But since "Section 1983 is the means by which Congress allows persons to sue for violations of their constitutional rights," the Court construes it as a Section 1983 claim. *Keslosky v. Borough of Old Forge*, No. 3:08cv1240, 2009 WL 2843326, at *6 n.3 (M.D. Pa. Aug. 31, 2009).

"To survive a motion to dismiss a claim brought pursuant to 42 U.S.C. § 1983, 'a plaintiff must allege (1) that some person has deprived him of a federal right, and (2) that the person who has deprived him of that right acted under color of state law.'" *King v. City of New York*, 581 F. Supp. 3d 559, 568 (S.D.N.Y. 2022) (quoting *Velez v. Levy*, 401 F.3d 75, 84 (2d Cir. 2005)). "Because vicarious liability is inapplicable to . . . § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Iqbal*, 556 U.S. at 676 (2009). "[A] municipality cannot be held liable under § 1983 on a *respondeat superior* theory." *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 691 (1978). Rather, "[a] municipal entity may be held liable only where the entity itself commits a wrong." *Daytree at Cortland Square, Inc. v. Walsh*, 332 F. Supp. 3d 610, 639 (E.D.N.Y. 2018).

The Court will address each of Plaintiff's Section 1983 claims in turn.

**1. First Amendment Retaliation Claim**

Strong first alleges a violation of the First Amendment, claiming that Defendants retaliated against him for exercising his free speech rights. (SAC ¶¶ 162–65). "To state a claim for First Amendment retaliation, a plaintiff must plausibly allege that '(1) [his] speech or conduct was protected by the First Amendment; (2) the defendant took an adverse action against [him]; and (3) there was a causal connection between this adverse action and the protected speech.'"

*Stajic v. City of New York*, 214 F. Supp. 3d 230, 235 (S.D.N.Y. 2016) (quoting *Matthews v. City of New York*, 779 F.3d 167, 172 (2d Cir. 2015)).

Because Strong is a public employee, the Court conducts a two-step inquiry to determine whether his speech is protected. "'The first requires determining whether the employee spoke as a citizen on a matter of public concern.'" *Matthews*, 779 F.3d at 172 (quoting *Garcetti v. Ceballos*, 547 U.S. 410, 418 (2006)); *see Montero v. City of Yonkers*, 890 F.3d 386, 395 (2d Cir. 2018) (explaining that a public employee "may be protected from retaliation even when speaking in the workplace when he or she is speaking as a citizen upon matters of public concern" (cleaned up)). "This step one inquiry in turn encompasses two separate subquestions: (1) whether the subject of the employee's speech was a matter of public concern[;] and (2) whether the employee spoke 'as a citizen' rather than solely as an employee." *Matthews*, 779 F.3d at 172 (internal quotation marks and citation omitted). "If the answer to either question is no, that is the end of the matter." *Id.* If, however, the answer to both questions is yes, the court then proceeds to the second step of the inquiry: "whether the relevant government entity had an adequate justification for treating the employee differently from any other member of the public based on the government's needs as an employer." *Id.* (internal quotation marks and citation omitted).

"Speech is of public concern if it relates to political, social or other community concerns, rather than an employee's personal concerns." *Arroyo v. Dep't of Educ*,

No. 19 Civ. 7416 (ER), 2020 WL 4570380, at *11 (S.D.N.Y. Aug. 6, 2020). "[D]iscussion regarding current government policies and activities is perhaps the paradigmatic matter of public concern." *Harman v. City of New York*, 140 F.3d 111, 118 (2d Cir. 1998) (cleaned up). Matters of public concern also include "'speech aimed at uncovering wrongdoing or breaches of the public trust.'" *Wrobel v. Cnty. of Erie*, 692 F.3d 22, 31 (2d Cir. 2012) (quoting *Glass v. Dachel*, 2 F.3d 733, 741 (7th Cir. 1993)). "However, if an employee raises the issue of discrimination to 'further his own employment interest,' his speech is likely not protected by the First Amendment." *McGrath v. Arroyo*, No. 17 Civ. 1461 (NGG) (RER), 2019 WL 3754459, at *16 (E.D.N.Y. Aug. 8, 2019) (quoting *White Plains Towing Corp. v. Patterson*, 991 F.2d 1049, 1059 (2d Cir. 1993)).

Plaintiff alleges that he "exercised his freedom of speech in regard to disability rights, right to refuse overtime, and the explanation of the dangers, harm and liability of continuing forced excessive overtime, to officials of [the City]." (SAC ¶ 163). For the most part, however, Strong's speech, as described in the SAC, relates to Strong's own "personal concerns," not matters of public concern. *Arroyo v. Dep't of Educ.*, 2020 WL 4570380 at *11. For example, Strong complained about delays in processing workers compensation claim and access to medical treatment (SAC ¶¶ 58, 62), submitted grievances on several occasions from May 2022 to September 2023 when he "received orders to work full-duty when he was assigned light-duty status" (*id.* ¶ 118; *see also id.* ¶ 78), and wrote explanations to his

supervisors that he refused orders to work full-duty posts because of his ADA rights (*see id.* ¶¶ 104, 113). Those instances of speech relate to Strong's allegations of personal discrimination against him, not "policy-oriented speech," *Matthews*, 779 F.3d at 174, or "anything beyond consequences he personally suffered at the hands of Defendants." *Wu v. Metro-N. Commuter R.R.*, No. 14 Civ. 7015 (LTS) (FM), 2015 WL 5567043, at *6 (S.D.N.Y. Sept. 22, 2015). Strong's speech generally concerned Defendants' treatment of *his* work assignments, not Defendants' actions writ large.

Even where Strong complained that "order[ing] disabled officers to work posts in the care, custody in control of inmates [was] unlawful," he did so in his answer responding to a departmental complaint alleging that he "was in violation of eight (8) charges for failures to obey orders to work the full-duty post." (SAC ¶ 117). Similarly, to the extent Strong "reported incidents of disability discrimination in the workplace" (*id.* ¶ 207), this appears to refer to Strong's own experiences of discrimination at GRVC. Without more, the Court cannot infer that Strong's statements regarding the illegality of Defendants' actions, or about disability discrimination in the workplace, concerned matters beyond furthering his "own employment interest" in fighting the disciplinary charges issued against him or obtaining reasonable accommodations for his disabilities. *Patterson*, 991 F.2d at 1059; *see also Giachetto v. Patchogue-Medford Union Free Sch. Dist.*, 413 F. Supp. 3d 141, 144 (E.D.N.Y. 2016) (dismissing First Amendment retaliation claim based

on "unspecified utterance" where plaintiff "fail[ed] to identify what the exact utterance was, or how this utterance . . . involved matters of public concern")

Nonetheless, the Court disagrees with Defendants' contention that *all* of the SAC's allegations concern only Strong's "personal grievances." (*See* Mot. at 2). Paragraph 120 alleges that in late September and October 2023, Plaintiff sent notices to the City, Molina, Lundi, and Cort "to cease the coercion and/or willful imprisonment to enforce excessive overtime, double-tours and more, and explained the dangers, harm, safety, and degradation of health to the staff, officers, inmates and public had been [facing] and will continue to face." (SAC ¶ 120). Here, Strong goes beyond addressing his personal experiences, and criticizes the actions and policies of the DOC insofar as they impact others, explaining that forced overtime creates dangers and causes harm to officers, inmates, and the public. Read in the light most favorable to Plaintiff, this allegation relates to matters of "safety in [his] workplace," a well-established example of a matter of public concern. *Munafo v. Metro. Transp. Auth.*, 285 F.3d 201, 212 (2d Cir. 2002) (explaining that complaints by MTA employee regarding, *inter alia*, "drivers[] being assigned vehicles with faulty brakes" constituted matter of public concern).

The public employee must also have spoken as a "citizen" for his speech to be protected by the First Amendment. The "controlling factor" in that determination is whether the employee's statements were made "pursuant to their official duties." *Garcetti*, 547 U.S. at 421. "The Supreme Court [has] stated that 'when public

employees make statements pursuant to their official duties . . . the employees are not speaking as citizens for First Amendment purposes, and the Constitution does not insulate their communications from employer discipline.'" *Montero*, 890 F.3d at 395 (quoting *Garcetti*, 547 U.S. at 421). "[T]he inquiry into whether speech was made pursuant to an employee's official duties is a practical one, focused on whether the speech was part-and-parcel of his concerns about his ability to properly to execute his duties." *Ross v. Breslin*, 693 F.3d 300, 306 (2d Cir. 2012) (cleaned up).

The SAC's allegations suggest that Strong was speaking as a citizen when making these statements, not as an employee pursuant to his official duties. Strong was employed as a correction officer. (SAC ¶ 18). His complaints about the facility-wide staffing issues and disability discrimination do not touch on "what he was employed to do," nor were they "part-and-parcel of his regular job." *Matthews*, 779 F.3d at 174 (quotation marks omitted). Strong's job responsibilities did not consist of reporting misconduct, nor did his role "encompass" making or commenting on staffing assignments, or ensuring a discrimination-free workplace. *Id.* Strong's "actual, functional job responsibilities did not include reporting his opinions" on facility-wide staffing assignments or potential discriminatory action. *Id.* The Court

therefore concludes, at the pleading stage, that Strong's notices as alleged in Paragraph 120 warrant First Amendment protection.[11]

Next, the Court looks at whether Strong's employer carried out "'retaliatory conduct that would deter a similarly situated individual of ordinary firmness from exercising his or her constitutional rights,'" *Wu*, 2015 WL 5567043 at *5 (quoting *Zelnik v. Fashion Inst. of Tech.*, 464 F.3d 217, 225 (2d Cir. 2015)). In doing so, the Court must determine whether Strong has sufficiently pled a causal connection between any alleged adverse action and the protected speech. *Matthews*, 779 F.3d at 172. "To prevail on a First Amendment retaliation claim, a plaintiff must establish that protected speech was a but-for cause of some adverse employment action." *Morales v. City of New York*, No. 21-925-CV, 2022 WL 2840035, at *2 (2d Cir. July 21, 2022). "'Causation can be established either indirectly by means of circumstantial evidence, for example, by showing that the protected activity was followed by adverse treatment in employment, or directly by evidence of retaliatory animus.'" *Stajic*, 214 F. Supp. 3d at 235 (quoting *Mandell v. County of Suffolk*, 316 F.3d 368, 383 (2d Cir. 2003)). On a motion to dismiss, "'the plaintiff's pleading need not clearly establish that the defendant harbored retaliatory intent. It is sufficient to allege facts which could reasonably support an inference to that effect.'" *Stajic*,

[11] Defendants make no argument that Strong's allegations fail to satisfy the second step of the protected speech analysis, *i.e.*, whether DOC had an adequate justification for treating Strong's speech differently based on its needs as an employer. *See Matthews*, 779 F.3d at 172.

214 F. Supp. 3d at 235 (quoting *Posr v. Court Officer Shield No. 207*, 180 F.3d 409, 418 (2d Cir. 1999)).

The Court finds that Strong adequately alleges that he suffered adverse action, such as being subjected to "forced excessive involuntary overtime," "undesirable posts every day," and "suspensions." (SAC ¶¶ 132, 135, 164). However, Plaintiff does not meet his burden of establishing a causal link between those actions and his protected speech. To start, Strong's suspensions took place in March 2022, June 2022, January 2023, and July 2023 (*id.* ¶¶ 72, 86–87, 105–06, 114–15, 125), before he sent his notices about the "dangers" of excessive overtime in September and October 2023 (*id.* ¶ 120). Further, Plaintiff himself admits that he was forced to "work overtime against his will nearly every day," and subjected to undesirable posts "every day," "since May 2022." (*Id.* ¶¶ 132, 232). He does not allege that his notices in September and October 2023 were the impetus for any undesirable work assignments or that he received any worse treatment because he expanded his complaints to encompass safety issues related to other officers. The Court therefore cannot find a causal relationship between Strong's notices in September and October 2023 and either his suspensions, forced overtime, or undesirable posts. *See Saetta v. Raynor*, No. 24 Civ. 1785 (NSR), 2026 WL 1601713, at *6 (S.D.N.Y. June 4, 2026) ("Speech that postdates an adverse employment action cannot, as a matter of logic and law, have caused it."); *Hill v. City of New York*, 136 F. Supp. 3d 304, 348–49 (E.D.N.Y. 2015) (dismissing First Amendment retaliation

claim because alleged adverse actions "all began well before Plaintiffs' claimed public advocacy" and the "mere continuation" of those actions "fails to sustain an inference of retaliatory intent" (citation omitted)).

Because Strong has not adequately alleged a causal nexus between any adverse actions and the "exercis[e] [of] his [] constitutional rights," *Wu*, 2015 WL 5567043, at *5 (citation omitted), the Court respectfully recommends that Plaintiff's First Amendment claim in Count I be dismissed.

**2. Willful Imprisonment**

Next, Strong brings a claim for "willful imprisonment" under Section 1983, which the Court interprets as a Section 1983 claim for false imprisonment under the Fourth Amendment. (*See* SAC ¶¶ 166–70). The Court finds that Strong has not sufficiently alleged false imprisonment.

"A section 1983 claim for false imprisonment is anchored in the Fourth Amendment right 'to be free from unreasonable seizures.'" *Iverson v. Annucci*, No. 18-CV-0886-LJV, 2020 WL 1083152, at *6 (W.D.N.Y. Feb. 28, 2020) (quoting *Russo v. City of Bridgeport*, 479 F.3d 196, 203 (2d Cir. 2007)). "When analyzing a claim under Section 1983 for false arrest and imprisonment, courts 'generally look[] to the law of the state in which the arrest occurred.'" *Sauer v. Town of Cornwall*, No. 20 Civ. 4881 (NSR), 2022 WL 4659687, at *6 (S.D.N.Y. Sept. 30, 2022) (quoting *Russo*, 479 F.3d at 203). "Under New York law, the elements of a false imprisonment claim are: '(1) the defendant intended to confine [the plaintiff], (2) the plaintiff was

conscious of the confinement, (3) the plaintiff did not consent to the confinement and (4) the confinement was not otherwise privileged.'" *Singer v. Fulton Cnty. Sheriff*, 63 F.3d 110, 118 (2d Cir. 1995) (quoting *Broughton v. State*, 37 N.Y.2d 451, 456, 373 N.Y.S.2d 87, 93, 335 N.E.2d 310, 314 (1975)).

"[C]onfinement under threat can give rise to a claim of false imprisonment." *Frey v. City of New York*, No. 12 Civ. 2074 (TPG), 2013 WL 706051, at *3 (S.D.N.Y. Feb. 27, 2013). However, "the threat of termination from one's employment" is not sufficient to support a false imprisonment claim. *Id.*; *see also Arrington v. Liz Claiborne*, 260 A.D.2d 267, 267–69, 688 N.Y.S.2d 544, 546 (1st Dep't 1999) ("Plaintiffs' fears that they would be . . . fired did not constitute detaining force necessary to establish the tort of false imprisonment."). Ultimately, because false imprisonment claims under Section 1983 are grounded in the Fourth Amendment, the Court must consider whether the conduct at issue constituted an unreasonable seizure, which occurs "'only if, in view of all the circumstances surrounding the incident, a reasonable person would have believed that he was not free to leave.'" *Posr v. Doherty*, 944 F.2d 91, 97 (2d Cir. 1991) (quoting *United States v. Mendenhall*, 446 U.S. 544, 554 (1980)).

Generally, Strong alleges that after the City permitted DOC to authorize unlimited overtime, "Molina and his administration . . . enforced . . . willful imprisonment of officers of all ranks to work excessive amounts of overtime, double-tours and more." (SAC ¶¶ 26–27). He claims that "on several occasion[s]" at some

point after May 2022, Gustuve and Harper "ordered officers to deny egress of gates to him" for refusal to work overtime shifts. (*Id.* ¶¶ 139–40). He alleges that both defendants "coerced officers to comply with orders to imprison him and other officers," stating "don't open that gate for him/her," "don't let him/her leave," and "don't let him/her out," which was enforced by "threat of formal disciplinary action supervised by" Grey. (*Id.* ¶ 141). After November 2023, Cort, Rivera, and Harper, "engaged, participated and/or condoned the keeping, forcing, imprisoning and stranding him on posts for double-tours and more, without relief for a meal, break, or restroom everyday." (*Id.* ¶ 142).

As pled, Strong's claim fails to allege that any of the Defendants actually confined him. Stokes, Lundi, and Maginley-Liddey are alleged to have committed "actions to willfully deny [Strong] egress" (*id.* ¶ 169), but beyond that conclusory allegation, there are no facts tying those individuals to the alleged imprisonment. Without such factual allegations, Strong fails to state a claim based on the conduct of these three individuals. *Campbell v. New York City Police*, No. 05 Civ. 2858 (FB), 2005 WL 1970954, at *2 (E.D.N.Y. Aug. 10, 2005) ("Mere conclusory allegations are insufficient to state a claim under § 1983.").

Next, Strong's allegations that Commissioner Molina and his administration "authorized, enforced and condoned" the "willful imprisonment of officers" (SAC ¶ 27), using the threat of disciplinary action "supervised" by Grey to compel obedience (*id.* ¶ 141), also fail to state a Section 1983 claim. "[S]upervision of others who

committed the violation" alone cannot establish liability. *Tangreti v. Bachmann*, 983 F.3d 609, 619 (2d Cir. 2020). Rather, "[t]o establish a violation of § 1983 by a supervisor, as with everyone else, . . . the plaintiff must establish a deliberate, intentional act on the part of the defendant to violate the plaintiff's legal rights." *Id.* at 618 (citation omitted). The SAC does not sufficiently allege any such specific act by Molina or Deputy Commissioner Grey.

As a result, the only Defendants who could possibly be liable for false imprisonment here are Gustuve, Harper, Rivera, and Cort. However, the only allegation supporting Cort and Rivera's direct involvement, Paragraph 142 of the SAC, does not identify any particular dates Strong was confined, or the specific actions attributable to each Defendant. The vague allegation that Cort and Rivera "engaged, participated, and/or condoned" Strong's "imprison[ment]" at some point after November 2023 is "insufficient to trigger" false imprisonment liability under Section 1983. *Nunez v. City of New York*, No. 14 Civ. 4182 (RJS), 2016 WL 1322448, at *5 (S.D.N.Y. Mar. 31, 2016), *aff'd*, 735 F. App'x 756 (2d Cir. 2018).

The allegations against Gustuve and Harper, while presenting a closer call, also fail to state a claim. The SAC does not allege sufficient facts for the Court to infer that Strong was confined at any given moment. Rather, Strong pleads that Gustuve and Harper ordered officers to "deny egress of [the] gates" on "several occasions." (SAC ¶ 140). Strong does not describe any specific instance of confinement; for example, he does not allege whether other officers obeyed Gustuve

and Harper's orders, whether Strong was physically threatened to stay at his post by other officers, or whether Strong truly felt unable to leave or instead simply feared the disciplinary consequences of leaving before his shift was up. In short, Strong fails to make any allegation that Gustuve and Harper's conduct made it such that Strong "reasonably felt that he was not free to leave or to move." *Blanco v. Success Academy Charter Schools, Inc.*, 722 F. Supp. 3d 187, 214 (S.D.N.Y. 2024).

To the extent that Strong's allegations suggest that he was confined due to any "threat of formal disciplinary action" (SAC ¶ 141), the "threat of termination from one's employment" cannot give rise to a false imprisonment claim. *Frey*, 2013 WL 706051, at *3. Strong thus fails to sufficiently allege false imprisonment here. The Court respectfully recommends that Count II be dismissed.

**3. Discrimination, Retaliation, and Hostile Work Environment**

Strong next pleads Section 1983 claims for discrimination, retaliation, and hostile work environment based on Plaintiff's disabilities. (SAC ¶¶ 171–85). Defendants argue, and the Court agrees, that these claims are not cognizable under Section 1983. (*See* Mot. at 9–10).

"A § 1983 action may not . . . be brought to vindicate rights conferred only by a statute that contains its own structure for private enforcement." *Patterson v. Cnty. of Oneida*, 375 F.3d 206, 225 (2d Cir. 2004). Plaintiff's discrimination, retaliation, and hostile work environment claims all relate to disability-based allegations. Strong explicitly styles his discrimination cause of action as a

"disability discrimination" claim, and summarizes facts related to disability discrimination. (*See* SAC ¶¶ 171–75). His "retaliation" cause of action likewise relates to a "pattern and practice of disability discrimination." (*Id.* ¶ 179). Finally, his hostile work environment claim relates to a "systematic pattern of disability discrimination, hostility, oppression[,] and bad faith." (*Id.* ¶ 184).

"[F]reedom from discrimination on the basis of disability" is a right secured by the ADA. *Fierro v. New York City Dep't of Educ.*, 994 F. Supp. 2d 581, 590 (S.D.N.Y. 2014); *see also Weinstein v. New York City Dep't of Educ.,* No. 16 Civ. 3118 (ILG) (RER), 2017 WL 2345640, at *4 (E.D.N.Y. May 30, 2017). Indeed, Plaintiff asserts causes of action for disability-based discrimination and retaliation under the ADA, which are analyzed below. (SAC ¶¶ 171–77, 178–82; *see* Discussion § B, *infra*).[12] Plaintiff's causes of action sounding in disability discrimination, retaliation, and hostile work environment are therefore not actionable under Section 1983. *See Weinstein*, 2017 WL 2345640 at *4 (dismissing claims of disability discrimination, including hostile work environment, as "not actionable under § 1983"). The Court thus recommends dismissal of Counts III, IV, and V of the SAC.

[12] While Plaintiff did not allege a hostile work environment claim under the ADA, "the Court should read the facts alleged in a *pro se* plaintiff's complaint for whatever claims may properly be based on such facts." *Finch v. New York*, No. 10 Civ. 9691 (VB), 2012 WL 2866253, at *8 (S.D.N.Y. May 30, 2012). The Court thus analyzes whether Plaintiff states a claim for hostile work environment under the ADA below, *see* Discussion § B, *infra.*

**4. Failure to Supervise and Intervene**

Next, the Court finds that Strong's Section 1983 claims for failure to supervise (SAC ¶¶ 191–94) and failure to intervene (*id.* ¶¶ 195–98) are also deficient. A plaintiff cannot state a Section 1983 claim for failure to supervise or intervene without an underlying constitutional deprivation. *Blyden v. Mancusi*, 186 F.3d 252, 265 (2d Cir. 1999) (failure to supervise); *Matthews v. City of New York*, 889 F. Supp. 2d 418, 443–44 (E.D.N.Y. 2012) (failure to intervene). Plaintiff's failure to allege an underlying constitutional violation necessarily dooms his failure to supervise and failure to intervene claims. The Court therefore recommends dismissal of Counts VII and VIII.

**5. *Monell* Claim**

Strong's failure to allege any underlying constitutional violation also dooms his *Monell* claim. "'[T]o prevail on a claim against a municipality under [§] 1983 based on acts of a public official, a plaintiff is required to prove: (1) actions taken under color of law; (2) deprivation of a constitutional or statutory right; (3) causation; (4) damages; and (5) that an official policy of the municipality caused the constitutional injury.'" *Torres v. Vasta*, No. 18 Civ. 8706 (KMK), 2019 WL 4640247, at *3 (S.D.N.Y. Sept. 24, 2019) (quoting *Roe v. City of Waterbury*, 542 F.3d 31, 36 (2d Cir. 2008)). It follows that "a *Monell* claim cannot lie in the absence of an underlying constitutional violation." *DeRaffele v. City of New Rochelle*, No. 15 Civ. 282 (KMK), 2017 WL 2560008, at *6 (S.D.N.Y. June 13, 2017).

Because, as found above, "the [SAC] does not plausibly allege any constitutional violations, [P]laintiff's municipal liability claim necessarily fails." *Chan v. City of New York*, No. 19 Civ. 7239 (RPK) (SJB), 2023 WL 2734681, at *8 (E.D.N.Y. Mar. 31, 2023); *see also Segal v. City of New York*, 459 F.3d 207, 219 (2d Cir. 2006) ("Because the district court properly found no underlying constitutional violation, its decision not to address the municipal defendants' liability under *Monell* was entirely correct."). The Court respectfully recommends dismissing Count VI.[13]

### B. ADA, NYSHRL, and NYCHRL Claims

Plaintiff alleges disability discrimination claims under the ADA, the NYSHRL, and the NYCHRL (Counts IX, XI and XVIII), as well as a retaliation claim under the ADA (Count X). As noted above, Plaintiff does not allege a claim for hostile work environment under any of these statutes, but he did allege such a claim under Section 1983. Having dismissed that claim on the ground that it rests on rights secured by the ADA, the Court construes the SAC to allege a hostile work

[13] The Court further notes that Plaintiff's *Monell* claim impermissibly names the individual Defendants in addition to the City. (*See* SAC ¶¶ 187–89), Because "*Monell* municipal liability does not extend to individuals," *Fate v. Petranker*, No. 19 Civ. 05519 (PMH), 2020 WL 3640007, at *7 (S.D.N.Y. July 6, 2020), the claims in Count VI against the individual Defendants cannot stand. Conversely, the SAC names the City as a defendant on Strong's underlying Section 1983 claims. (*See* SAC ¶¶ 164–65. 167–70, 175–77, 181–82, 184–85). Because "*Monell* sets forth the exclusive theory under which an individual may sue a municipality for a violation of federal constitutional rights under color of state law," the claims against the City in Counts I–V, VII, and VIII are equally impermissible. *Corbett v. City of New York*, No. 15 Civ. 9214 (GHW), 2016 WL 7429447, at *6 (S.D.N.Y. Dec. 22, 2016); *see also, e.g.*, *Cabello-Setlle v. Cnty. of Sullivan*, No. 21 Civ. 7477 (NSR), 2022 WL 4387637, at *3 (S.D.N.Y. Sept. 22, 2022) (dismissing all non-*Monell* claims against municipality "[a]s a threshold matter").

environment claim under the ADA. (*See* Mot. at 16–18 (addressing sufficiency of hostile environment claim under the ADA)).

**1. Disability Discrimination Claims**

The ADA prohibits work-related discrimination "on the basis of disability." 42 U.S.C. § 12112(a). "'The elements to find disability discrimination under the NYSHRL and NYCHRL generally track the ADA,' with the caveat that the 'NYSHRL provides broader protection than the ADA, and the NYCHRL is broader still.'" *Romano v. A360 Media, LLC*, No. 20 Civ. 8988 (LTS) (OTW), 2023 WL 348459, at *6 (S.D.N.Y. Jan. 20, 2023) (quoting *Thomson v. Odyssey House*, No. 14 Civ. 3857 (MKB), 2015 WL 5561209, at *18 (E.D.N.Y. Sept. 21, 2015), *aff'd*, 652 F. App'x 44 (2d Cir. 2016)); *see also Murtha v. New York State Gaming Comm'n*, No. 17 Civ. 10040 (NSR), 2019 WL 4450687, at *16 (S.D.N.Y. Sept. 17, 2019) ("[T]he legal standards for discrimination claims under the ADA and the NYSHRL are essentially the same, except to the extent that the NYSHRL has been interpreted to endorse a broader definition of 'disability.'"); *Limauro v. Consol. Edison Co.*, No. 20 Civ. 3558 (CM), 2021 WL 466952, at *4 (S.D.N.Y. Feb. 9, 2021) ("Practically speaking, because the NYCHRL is more protective . . ., a claim is automatically stated under the NYCHRL if it is stated under the federal and state statutes.").

"Discrimination claims under the ADA may be brought under a theory of adverse employment action or of failure to provide reasonable accommodation." *Berger v. N.Y. City Police Dep't,* 304 F. Supp. 3d 360, 368 (S.D.N.Y. 2018). Although

not explicitly pled, the Court will assume that Strong alleges disability discrimination under both adverse employment action and failure to accommodate theories. (*See* Mot. at 14–16 (likewise assuming and addressing Plaintiff's disability discrimination claims under both theories)). The Court analyzes whether Plaintiff states a claim under either theory.

**a. Adverse Employment Action Theory**

First, the Court finds that Plaintiff successfully pleads a claim of disability discrimination under the adverse employment action theory. To state an ADA disability discrimination claim under this theory, "a plaintiff must sufficiently allege that: '(1) [the employer] is subject to the ADA; (2) he was a person with a disability within the meaning of the ADA; (3) he was otherwise qualified to perform the essential functions of his job, with or without reasonable accommodation; and (4) he suffered adverse employment action because of his disability.'" *Melendez v. Cablevision Sys. Corp.*, No. 17 Civ. 9161 (KBF), 2018 WL 2727890, at *4 (S.D.N.Y. June 6, 2018) (quoting *Shannon v. N.Y. City Transit Auth.*, 332 F.3d 95, 99 (2d Cir. 2003)). At the motion to dismiss stage, Strong need only plead facts to plausibly support a "minimal inference of discriminatory motivation." *Dooley v. JetBlue Airways Corp.*, 636 F. App'x 16, 20 (2d Cir. 2015) (quotation marks omitted); *see also Crosby v. Stew Leonard's Yonkers LLC*, 695 F. Supp. 3d 551, 567 (S.D.N.Y. 2023).

Defendants do not dispute that the City is subject to the ADA. Defendants also do not contest the second or third elements: that Strong was "disabled" under the ADA and was otherwise qualified to perform the essential aspects of his job. However, before assessing the fourth element (whether Strong suffered adverse employment actions because of a disability), it is necessary for the Court to clarify what disabilities Strong is claiming he had. The SAC is not pellucidly clear on this point, describing a number of mental and physical conditions that Strong suffered from without specifying which ones undergird his disability discrimination claims.

In reviewing the SAC, the Court finds that Plaintiff has, at a minimum, pled two cognizable disabilities within the meaning of the ADA. First, Strong alleges that he suffered from "mental distress" and "anxiety disorder" that led him to seek mental health treatment and caused him to have regular "panic attacks" beginning after the December 28, 2020 assault by an inmate, which continued through late 2023 and were augmented by the additional inmate assault on April 16, 2023. (*See* SAC ¶¶ 67, 75, 97, 150–57, 159–60). Second, Strong alleges that he suffered "severe effects" from Crohn's disease beginning in late September 2022, which required hospitalization and medication, and led an HMD physician to assign him to light-duty status in October 2022 with "no inmate supervision" and a requirement that he be "close to [a] bathroom." (*Id.* ¶¶ 75–76). These conditions, as alleged, both qualify as disabilities under the ADA. *See C.C. v. Google, LLC*, No. 24 Civ. 7811 (PAE), 2025 WL 1938809, at *7–8 (S.D.N.Y. July 15, 2025) (finding that "PTSD and

anxiety stemming from a 'brutal' 2014 attack in New York City" qualified as disability under ADA and collecting cases); *Miller v. E. Midwood Hebrew Day Sch.*, No. 19 Civ. 5580 (AMD)(LB), 2021 WL 966166, at *4 (E.D.N.Y. Feb. 15, 2021) (finding that Crohn's disease "meets the ADA's definition of disability"), *R&R adopted*, 2021 WL 965072 (E.D.N.Y. Mar. 15, 2021).[14]

Turning to the fourth element, Strong has adequately alleged, and Defendants again do not dispute, that he suffered adverse employment actions within the meaning of the ADA. "To qualify as an adverse employment action, the employer's action toward the plaintiff must be materially adverse with respect to the terms and conditions of employment." *Davis v. New York City Dep't of Educ.*, 804 F. 3d 231, 235 (2d Cir. 2015) (citation omitted). "[T]he receipt of undesirable assignments must be accompanied by a material detriment to an employee's working conditions to constitute an adverse employment action," and "subjective dissatisfaction with the work assigned, absent some evidence that the assignment materially worsened Plaintiff's working conditions, is insufficient to make out an adverse employment action." *Smith v. City of New York*, 385 F. Supp. 3d 323, 335–

[14] On the other hand, Plaintiff's allegations of "numerous contusions and herniations" stemming from the 2020 inmate assault (SAC ¶46), "shingles" (*id.* ¶75), and "contusions" and a "fractured rib" stemming from the 2023 inmate assault (*id.* ¶ 97), without any allegations of long-term or physical impairment, may be viewed as temporary ailments that are insufficient to plead disability under the ADA. *See Kruger v. Hamilton Manor Nursing Home*, 10 F. Supp. 3d 385, 389 (W.D.N.Y. 2014) (collecting cases and stating that "broken and fractured bones do not generally qualify as a disability within the meaning of the ADA"). However, the Court need not and does not decide those issues at this time. Nor does the Court decide whether these conditions would qualify under the NYSHRL and NYCHRL's "broader definition of 'disability,'" which does not "require[] any showing that the disability substantially limits a major life activity." *Reilly v. Revlon, Inc.*, 620 F. Supp. 2d 524, 541 (S.D.N.Y. 2009).

36 (S.D.N.Y. 2019) (citations and internal quotation marks omitted). In that vein, disciplinary charges and written reprimands that do not result in a "loss of pay, suspension, or material change in the terms of the Plaintiff's employment" do not constitute adverse employment actions. *Vale v. Great Neck Water Pollution Control Dist.*, 80 F. Supp. 3d 426, 435 (E.D.N.Y. 2015).

Strong has pled adverse employment actions by alleging that he was suspended without pay four times: on June 21, 2022, after the death of inmate Carrasquillo (SAC ¶ 72); on January 4, 2023, after refusing an order to work a full-duty post with "assaultive inmates" (*id.* ¶¶ 86–88; *see* note 5, *supra*); around July 19, 2023, after refusing orders to work a "housing area control post" (*id.* ¶¶ 102–06); and around July 30, 2023, when he refused Gustuve's orders to work the same post where he had previously been assaulted (*id.* ¶¶ 107–15). *See Lovejoy-Wilson v. NOCO Motor Fuel, Inc.*, 263 F.3d 208, 224 (2d Cir. 2001) (holding that suspension without pay constitutes an adverse employment action in the context of an ADA claim).[15]

Finally, Strong must demonstrate that the adverse employment actions occurred *because* of his disabilities. Here, Defendants contend that the SAC "fails to plausibly allege that any adverse actions were causally connected to his purported disabilities." (Mot. at 14). The Court disagrees.

[15] Strong also alleges he was suspended on March 29, 2022 for an "out of residence violation" by two individuals who are not named as defendants in this action. (SAC ¶ 125). As Strong makes no allegation that this suspension was related to his alleged disabilities, the Court does not examine it as an adverse action for purposes of his ADA claim.

"Courts in this Circuit apply a 'but-for' standard to assess causation" in disability discrimination cases. *C.C.*, 2025 WL 1938809 at *4. Therefore, to survive a motion to dismiss, "a complaint must plausibly allege that discrimination was a 'but-for cause of [the] adverse employment action.'" *Id.* (quoting *Piligian v. Icahn Sch. of Med. at Mount Sinai*, 490 F. Supp. 3d 707, 717 (S.D.N.Y. 2020)); *see Natofsky v. City of New York*, 921 F.3d 337, 348 (2d Cir. 2019). "The complaint need not allege that discrimination was the employer's sole but-for cause for the adverse employment action; it must, however, allege that the action would not have occurred absent the discrimination." *C.C.*, 2025 WL 1938809 at *4 (citation omitted). The requisite inference of causation may be pled in several ways, including, *inter alia*, through direct evidence of "statements or . . . conduct reflecting animus towards people with disabilities," "different treatment" of the plaintiff as compared with non-disabled employees, a "pattern of discrimination in the workplace" based on the same protected characteristic, and "temporal proximity between . . . disclosure of [the employee's] disability and an adverse action." *Id.* (internal quotation marks and citations omitted).

Measured against these standards, Strong's allegations plausibly plead a causal connection for the three suspensions occurring in 2023. Each 2023 suspension was based on Plaintiff refusing orders to work full-duty shifts due to his disabilities. For each suspension, Plaintiff alleges that the Defendants who suspended him knew about his disability and accommodations to only work light-

duty assignments. For the January 2023 suspension by Rivera and Harper, Plaintiff alleges that he had made "several verbal and written grievances" to those Defendants about "full-duty high classification posts that disregarded his light-duty status." (*See* SAC ¶ 78, 86–87). For the July 2023 suspension issued by Stokes, the SAC suggests that Plaintiff wrote Stokes that the "explanation for his refusal" was his ADA rights. (*Id.* ¶ 104). And for the July 2023 suspension issued by Gustuve, Strong alleges that Gustuve knew about his disability and accommodation, yet still told Strong that "only pregnant officers will not be forced to work within the jail," and that he would "order Plaintiff to work that post every day and [] suspend Plaintiff each time his order [was] refused." (*Id.* ¶ 110). Moreover, each suspension occurred within days of Strong's objections to his work assignments, in close proximity to Strong's alerting or reminding his superiors of his disability accommodations. (*See id.* ¶¶ 102, 106, 107, 115).

Plaintiff's allegations that Defendants suspended him in the face of his refusal, based on his disabilities, to undertake full-duty assignments, instead of accommodating his disabilities by giving him light-work assignments, provides "plausible support to a minimal inference of discriminatory motivation." *Langella v. Mahopac Cent. Sch. Dist.*, No. 18 Civ. 10023 (NSR), 2023 WL 2529780, at *3 (S.D.N.Y. Mar. 15, 2023) (citing *Dooley*, 636 Fed. App'x. at 21); *see also Stapleton v. Prince Carpentry, Inc.*, No. 22 Civ. 4044 (NCM) (JMW), 2025 WL 2591519, at *13 (E.D.N.Y. Sept. 8, 2025) ("[W]here a plaintiff asserts that an adverse employment

action is tied to an employer's failure to accommodate, the failure to accommodate the plaintiff's disability may constitute evidence of discriminatory intent." (internal quotation marks and citation omitted)); *Berger v. U.S. Dep't of Commerce,* No. 22 Civ. 10257 (GHW) (SDA), 2025 WL 1095419, at *8 (S.D.N.Y. Mar. 27, 2025) (noting that "the employer's failure to accommodate may serve as evidence of discriminatory intent"), *R&R adopted*, 2025 WL 1094495 (S.D.N.Y. Apr. 11, 2025).

Defendants argue in conclusory terms that "Plaintiff does not allege any facts to suggest that the employment actions he complains of were because of any alleged disability he may have suffered from." (Mot. at 14). To the extent Defendants imply that the suspensions were based on Strong's refusal to comply with orders that he work full-duty posts rather than on his disabilities (*see id.* at 5), that argument misses the point. Strong refused to comply with those orders—and, as alleged, told his superiors that he was refusing to comply with the orders—*because of* his disabilities. That is enough to plead causation.

In *Lovell v. City of New York*, No. 24 Civ. 873 (JAV), 2026 WL 440714 (S.D.N.Y. Feb. 17, 2026), for example, the plaintiff was terminated from her job because she did not return to work in the timeframe set by her employer after an extended absence due to her medical disability. *Id.* at *2. Plaintiff, through a letter by her doctor, let her employer know that her disability was the reason she would not return to work. *Id.* She was terminated a week after sending that notice. *Id.* The court held that the plaintiff had "alleged facts sufficient to support an inference

that she was terminated due to her extended absence from work, *which was a direct result of her medical condition*." *Id.* at *5 (emphasis added). So too here, Strong has sufficiently alleged that he was suspended due to his refusal to work full-duty shifts, which was a direct result of his alleged disabilities.

The causation analysis with respect to Strong's 2022 suspension related to the death of inmate Carrasquillo is more nuanced. The SAC alleges that around May 2022, after being out of work for around eight months for mental health treatment due to the 2020 inmate assault, Strong returned to work and received a light-duty accommodation from HMD with "[n]o inmate supervision" instructions, ending on June 22, 2022. (SAC ¶¶ 67–68). Nonetheless, he was allegedly "forced" to work a full-duty overnight shift on June 20, 2022, and after Carrasquillo died that same day, Strong was suspended by Molina on June 21, 2022, along with two other officers. (*Id.* ¶¶ 69–72). Strong appealed his suspension, citing, *inter alia*, his "restriction from inmate supervision," but the appeal was denied and he was formally charged with negligence in the death of Carrasquillo on May 8, 2023. (*Id.* ¶¶ 73–74).

Unlike the 2023 suspensions for refusing to obey orders, the conduct underlying the 2022 suspension was not the direct result of Strong's disability; rather, he was suspended due to the inmate's death. Strong does not specifically allege that his disability was responsible for him not taking whatever action DOC felt he should have taken to prevent Carrasquillo's death. And he affirmatively

alleges that two other officers assigned to the same housing area, who are not alleged to be disabled, were suspended as well (*id.* ¶¶ 71–72), thereby "undermin[ing] [his] own cause by alleging facts that refute any inference of discrimination" in relation to this suspension. *Powell v. Merrick Acad. Charter Sch.*, No. 16 Civ. 5315 (NGG) (RLM), 2018 WL 1135551, at *8 (E.D.N.Y. Feb. 28, 2018).

Still, the SAC does allege that Strong's supervisors forced him to work an inmate supervision shift on June 20, 2022, in disregard for his disability-related accommodation, still in effect as of that date, that limited him to light-duty, non-inmate supervision assignments. (SAC ¶¶ 69–73). Had his accommodation been respected, he would not have been required to work the housing area shift on June 20 that ultimately led to his suspension. The SAC further alleges that Strong asked to rescind the suspension due to his disability-related "restriction from inmate supervision" and that Defendants nonetheless "wrongfully" charged him with negligence. (*Id.* ¶¶ 73–74). At the pleading stage, where all reasonable inferences must be drawn in Plaintiff's favor and only a "minimal inference of discriminatory motivation" need be pled, *Dooley*, 636 F. App'x at 20, these allegations suffice to plausibly allege but-for causation.

Accordingly, Strong has stated a discrimination claim under the ADA, and therefore under the NYSHRL and NYCHRL, on an adverse employment action theory.

**b. Failure to Accommodate Theory**

The Court also finds that Plaintiff successfully pleads disability discrimination under a failure to accommodate theory. "To state a claim under the ADA and the NYSHRL based on a failure-to-accommodate theory, the plaintiff must plausibly allege that: (1) the plaintiff is a person with a disability as defined in the ADA; (2) an employer covered by the statute had notice of the disability; (3) with reasonable accommodation, the plaintiff could perform the essential functions of the job at issue; and (4) the covered employer refused to make such accommodations." *Hager-Reilly v. SCO Fam. of Servs.*, No. 21 Civ. 11023 (JGK), 2023 WL 8478205, at *5 (S.D.N.Y. Dec. 4, 2023); *see Noll v. Int'l Bus. Mach. Corp.*, 787 F.3d 89, 94 (2d Cir. 2015). As noted above, Plaintiff has alleged, and Defendants do not dispute, that Plaintiff suffered from disabilities and that Defendants were aware of Plaintiff's disabilities.

Defendants claim that Strong "does not plausibly allege how any requested accommodation would allow him to perform the essential functions of his job." (Mot. at 15). Defendants further argue that Strong "concedes multiple times that he was provided reasonable accommodations." (*Id.*). These arguments are based on Defendants' assertion that Strong's allegations are contradictory: that Strong both claims "he was afforded 'light duty status and reasonable accommodations on each event he had suffered injuries from'" (*id.* (citing SAC ¶ 200 (quotation mark

omitted))), "while also simultaneously claiming Defendants denied 'his right to reasonable accommodations.'" (*Id.* (citing SAC ¶ 214)).

Defendants misconstrue the import of Strong's allegations. True, Strong alleges that, on several occasions, HMD doctors and psychologists afforded him reasonable accommodations by directing that he be assigned to light-duty work with no inmate supervision. (SAC ¶¶ 68, 76, 98, 200). But he also alleges that Defendants then *failed to honor* those reasonable accommodations by insisting that he work full-duty posts with inmate supervision. (*e.g., id.* ¶¶ 69–70, 77, 86, 103, 108). Strong also alleges that on at least one occasion, Defendant Cort directed an HMD physician to change her reasonable accommodation recommendation and approve Strong's assignment to full-duty work. (*Id.* ¶¶ 89–91).

An employer does not comply with its obligations under the ADA by *saying* that it will afford a disabled employee a reasonable accommodation, but then failing to deliver on that promise. A "[r]easonable accommodation may take many forms, but it must be effective." *Noll*, 787 F.3d at 95. An accommodation that is not honored cannot be effective. *See Tafolla v. Cnty. of Suffolk*, No. 17 Civ. 4897 (JS) (AKT), 2021 WL 3675042, at *6 (E.D.N.Y. Aug. 19, 2021) ("Of course, defendants who fail to honor and abide by a granted accommodation effectually refuse to accommodate the plaintiff."), *aff'd in part, rev'd in part on other grounds and remanded sub nom. Tafolla v. Heilig*, 80 F.4th 111 (2d Cir. 2023). That, in substance, is what Strong alleges here.

Defendants also argue that employers "are not required to provide a perfect accommodation" and "'may choose the less expensive accommodation or the accommodation that is easier for it to provide.'" (Mot. at 15–16 (quoting 29 C.F.R. § 1630)). But whatever merit such an argument ultimately may have after the facts have been developed in discovery, it has no merit at the pleading stage given Strong's allegations. "All that [Strong] must do at the motion to dismiss stage is plead the existence of a plausible accommodation, the costs of which, facially, do not clearly exceed its benefits." *Shaywitz v. Am. Bd. of Psychiatry & Neurology*, 675 F. Supp. 2d 376, 390 (S.D.N.Y. 2009) (citation and internal quotation marks omitted). "In other words, a plaintiff bears only the burden of identifying an accommodation which is reasonable." *Limauro*, 2021 WL 466952 at *7 (cleaned up). Plaintiff has met this pleading burden here. The SAC's allegations make abundantly clear that a reasonable accommodation would have been "light-duty status" with "no inmate supervision instructions"—an accommodation that, as alleged, was in fact regarded as reasonable and necessary by DOC's medical professionals, but then disregarded by Defendants in practice.

Accordingly, Strong has also sufficiently alleged the remaining elements of a failure to accommodate claim: that he was able to perform the essential functions of his job with reasonable accommodation, and that Defendants refused to make such accommodations. The Court therefore finds that Strong has sufficiently pled a claim for disability discrimination under a failure to accommodate theory as well.

For the foregoing reasons, the Court respectfully recommends denying Defendants' motion to dismiss Counts IX, XI, and XVIII.

**2. Retaliation Claim**

Strong's retaliation claim under the ADA alleges that he reported incidents of disability discrimination to "agents of [the City]"and that Defendants retaliated against him for those reports by subjecting him to suspensions, changes of schedule, denial of meal breaks, and double tours. (SAC ¶¶ 206–10).[16] The Court finds that this claim also is sufficiently pled.

"To state a claim for retaliation in violation of the ADA, 'a plaintiff must plausibly allege that 1) the employee engaged in a protected activity; 2) the employer was aware of that activity; 3) the employee suffered an adverse employment action; and 4) there was a causal connection between the protected activity and the adverse employment action.'" *Donkor v. Weill Cornell Med. College*, No. 23 Civ. 369 (VSB), 2025 WL 639313, at *6 (quoting *Murtha*, 2019 WL 4450687 at *14.*

First, Strong has sufficiently alleged protected activity. "The term 'protected activity' refers to action taken to protest or oppose statutorily prohibited discrimination." *Wright v. Monroe Cnty. Hosp.*, 493 F. App'x 233, 236 (2d Cir. 2012). "An employee's complaint may qualify as protected activity, satisfying the

[16] In contrast to his disability discrimination claims, Strong asserts a retaliation claim under the ADA but not under the NYSHRL or NYCHRL.

first element of this test, so long as the employee has a good faith, reasonable belief that the underlying challenged actions of the employer violated the law." *Kelly v. Howard I. Shapiro & Assocs. Consulting Eng'rs, P.C.*, 716 F.3d 10, 14 (2d Cir. 2013) (citation omitted). "[I]nformal complaints to management are considered protected activity," *Felton v. Katonah Lewisboro Sch. Dist.*, No. 08 Civ. 9340 (SCR), 2009 WL 2223853, at *6 (S.D.N.Y. July 27, 2009), as are "complaints of ADA discrimination," *Flieger v. E. Suffolk BOCES*, 693 F. App'x 14, 18 (2d Cir. 2017), EEOC complaints, *Jones v. City of New York*, No. 17 Civ. 4894 (AT), 2020 WL 91532 at *8 (S.D.N.Y. Jan. 8, 2020), and requests for reasonable accommodations. *See King v. Town of Wallkill*, 302 F. Supp. 2d 279, 293(S.D.N.Y. 2004) ("[R]equests to be placed on light duty. . . constitute protected activities.").

The SAC alleges multiple instances of protected activity under the ADA, including the "written explanation" invoking the ADA in response to Stokes' July 19, 2023 order to work full-duty shifts (SAC ¶ 104) and the "written explanation" invoking the ADA in response to Gustuve's July 30, 2023 order to work full-duty shifts (*id.* ¶ 113). In addition, drawing all reasonable inferences in Plaintiff's favor, the Court finds that the numerous "verbal and written grievances" Strong regularly made to Cort, Rivera, Gustuve, Harper, and others from May 2022 to September 2023 about full-duty posts that disregarded his "light-duty status" and requests for "reasonable accommodations" (*id.* ¶¶ 78, 79, 118) constitute protected activity, as these allegations suggest that he protested behavior prohibited by the ADA. *See*

*King v. Town of Walkill*, 302 F. Supp. 2d at 293; *Barney*, 2009 WL 6551494 at *2, 11 (finding that oral complaint to manager that coworker had made “racial remarks to her” constituted protected activity).

Defendants, without discussion of the applicable case law, argue that “Plaintiff fails to plausibly allege that he engaged in any protected activity” and merely “attempts to repackage a series of routine workplace ‘complaints’ and generalized grievances as protected activity, which is insufficient as a matter of law.” (Mot. at 19). Without referencing any of the complaints and grievances described above involving non-compliance with the ADA and failure to accommodate Strong with light-duty posts, Defendants cite a single example of a complaint by Strong about “the delay of his workers compensation application” as an insufficient allegation of protected activity. (*Id.*). This argument simply ignores the numerous allegations in Strong’s SAC about other complaints and grievances he filed regarding ADA discrimination, as well as the precedent discussed above holding that such complaints constitute protected activity.

Next, the SAC alleges that the City was aware of Strong’s protected activity. “Courts have found general corporate knowledge to arise when a supervisor, corporate officer, or employee whose job is to investigate and resolve discrimination complaints becomes aware of the protected activity.” *Armstrong v. Metro. Transp. Auth.*, No. 07 Civ. 3561 (DAB), 2014 WL 4276336, at *20 (S.D.N.Y. Aug. 28, 2014). Here, the aforementioned complaints of prohibited behavior were received by

captains (Gustuve and Harper), an assistant deputy warden (Stokes), the assistant warden (Rivera), and the assistant commissioner of the GRVC (Cort). Strong therefore satisfies the knowledge prong of a retaliation claim.

The SAC also alleges that Strong experienced adverse employment actions relating to his complaints and grievances. The Second Circuit has recognized that the definition of adverse employment action for purposes of a retaliation claim "'covers a broader range of conduct'" than is the case for discrimination claims. *Lee v. Riverbay Corp.*, 751 F. Supp. 3d 259, 280 (S.D.N.Y. 2024) (quoting *Vega v. Hempstead Union Free Sch. Dist.*, 801 F.3d 72, 90 (2d Cir. 2015)). In the context of a retaliation claim, an adverse employment action is defined as "any action that 'could well dissuade a reasonable worker from making or supporting a charge of discrimination.'" *Vega*, 801 F.3d at 90 (quoting *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 57 (2006)).

Here, at a minimum, Strong's suspensions without pay stemming from his refusal to obey orders constitute adverse actions. Beyond this, Strong also alleges that he was given "the most undesirable posts" involving "high classification and assaultive inmates" and "scheduled [for] double-tours everyday against his will." (SAC ¶¶ 80, 180–81, 209). Under the broader definition of adverse action applicable to retaliation claims, these alleged responses to Strong's complaints, which could dissuade a reasonable employee from making a discrimination charge, likely qualify as adverse actions as well. *See Adams v. City of New York*, 837 F. Supp. 2d 108, 122

(E.D.N.Y. 2011) (finding that "the threat of being relegated to an allegedly inferior stratum of work assignments" constitutes adverse employment action for ADA retaliation claims).

Finally, Strong has also adequately pleaded a causal connection between his protected activity and Defendants' adverse actions. ADA retaliation claims, like discrimination claims, are governed under the "but for" standard. *Sharikov v. Philips Med. Sys. MR, Inc.*, 103 F.4th 159, 170 (2d Cir. 2024). "Causation may be shown either through direct evidence of retaliatory animus or indirectly, by showing that the protected activity was followed closely by discriminatory treatment." *Id.* (internal quotation marks and citation omitted). Defendants argue that Strong has failed to allege causation because a majority of the alleged adverse actions, including his suspensions, occurred "before he filed his EEOC complaint" in August 2023. (Mot. at 20). This argument, however, wrongly assumes that the EEOC complaint is the only protected activity alleged in the SAC. As discussed above, that is not the case. The SAC alleges several protected complaints and grievances, well before Strong filed his EEOC complaint and Strong's suspensions.

These include complaints in close temporal proximity to, and specifically in connection with, the suspensions. For example, Strong alleges that upon returning to work on May 8, 2023 and for several weeks thereafter, he refused his superior officers' commands that he work full-duty posts, citing his need for reasonable accommodation under the ADA—only to be directed to work a full-duty post on July

19, 2023 and then suspended a few days later after he refused to do so and provided a written explanation for his refusal. (*See* SAC ¶¶ 100, 102–06). Similarly, Strong alleges that he was suspended for the July 30, 2023 incident involving Gustuve, after he again explained that the reason he refused Gustuve's orders was that they were unlawful under the ADA. (*See id.* ¶¶ 107–14).[17]

In addition to the suspensions, Strong alleges that throughout May 2022 and September 2023, he was given undesirable work assignments and double tours after, and in retaliation for, his complaints about disability discrimination and requests that he receive only light-duty posts without inmate supervision responsibilities. (*See id.* ¶¶ 78–81, 100, 102, 118, 181, 209). Crediting the truth of Strong's allegations at this stage, and viewed within the context of his allegations overall, they likewise are sufficient to plead the requisite causal connection for an ADA retaliation claim.

In sum, the Court finds that Strong has stated a claim for retaliation under the ADA, and thus recommends denying Defendants' motion to dismiss Count X.

[17] Defendants argue that the September 18, 2023 disciplinary charges, issued just over a month after Strong's EEOC complaint, "were not retaliatory" because Strong "admittedly refused orders on July 30, 2023." (Mot. at 20). However, the Court need not, and does not, decide whether Strong states a claim for retaliation under the ADA in relation to his EEOC complaint because his retaliation claim is based on his reports of "incidents of disability discrimination in the workplace to agents of [the City]." (SAC ¶¶ 207–09). *See Ahmad v. New York City Health & Hosps. Corp.*, No. 20 Civ. 675 (PAE), 2021 WL 1225875, at *32 n.17 (S.D.N.Y. Mar. 31, 2021) (declining to analyze ADA retaliation claims in relation to EEOC complaints where plaintiffs "[did] not allege that they were retaliated against for doing so"). To the extent Defendants argue that the earlier suspensions could not have been retaliatory because Strong "admittedly refused orders" to work full-duty posts, that argument is rejected for the same reason discussed in connection with Strong's discrimination claim—Strong claims that the underlying reason he refused to comply with the orders is that Defendants refused to honor his requests for reasonable accommodations for his disabilities.

**3. Hostile Work Environment Claim**

The Court also finds that Strong has pled enough facts to state a claim of hostile work environment under the ADA.

"[H]ostile work environment claims are cognizable under the ADA." *Fox v. Costco Wholesale Corp.*, 918 F.3d 65, 73 (2d Cir. 2019). "To state a claim for a hostile work environment under the ADA, a plaintiff must allege '(1) that the harassment was sufficiently severe or pervasive to alter the conditions of his employment and create an abusive working environment, and (2) that a specific basis exists for imputing the objectionable conduct to the employer.'" *Schiavone v. Town of Orangetown*, No. 25 Civ. 3345 (AEK), 2026 WL 821455, at *4 (S.D.N.Y. Mar. 25, 2026) (quoting *Fox*, 918 F.3d at 74).

"Hostile work environment claims under the ADA are evaluated under the same standards as hostile work environment claims under Title VII." *Monterroso v. Sullivan & Cromwell, LLP*, 591 F. Supp. 2d 567, 584 (S.D.N.Y. 2008). In making this evaluation, courts consider "the totality of the circumstances," including "'the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance.'" *Littlejohn v. City of New York*, 795 F.3d 297, 321 (2d Cir. 2015) (quoting *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 23 (1993)). A plaintiff must also "'demonstrate that [he] was subjected to the hostility because of [his disability].'" *Gary L. v. CSX Transp., Inc.*, No. 6:18-

CV-808 (MAD/ATB), 2020 WL 6343289, at *3 (N.D.N.Y. Oct. 29, 2020) (alterations in original) (quoting *Brennan v. Metro. Opera Ass'n, Inc.*, 192 F.3d 310, 318 (2d Cir. 1999)).

While the bar for establishing a hostile work environment is high, the Second Circuit has "repeatedly cautioned against setting the bar too high." *Terry v. Ashcroft*, 336 F.3d 128, 148 (2d Cir. 2003). "'At the motion to dismiss stage, . . . a plaintiff need only plead facts sufficient to support the conclusion that [he] was faced with harassment of such quality or quantity that a reasonable employee would find the conditions of her employment altered for the worse.'" *Kirkland-Hudson v. Mount Vernon City Sch. Dist.*, 665 F. Supp. 3d 412, 465 (S.D.N.Y. 2023) (quoting *Cowan v. City of Mount Vernon*, No. 14 Civ. 8871 (KMK), 2017 WL 1169667, at *4 (S.D.N.Y. Mar. 28, 2017)); *see also Terry*, 336 F.3d at 148.

Defendants argue that Strong "fails to state a hostile work environment because he does not allege that any actions were the result of discriminatory animus or that Plaintiff faced more than mere petty slights or trivial inconveniences." (Mot. at 17). Rather, the "handful of incidents Plaintiff alleges do not indicate that his workplace was 'permeated with discriminatory intimidation, ridicule, and insult.'" (*Id.* (quoting *Pattanayak v. Mastercard Inc.*, No. 22-1411, 2023 WL 2358826 at *4 (2d Cir. Mar. 6, 2023)). Defendants' broad-stroke, conclusory arguments, which are not supported by any specific citations to the SAC, fail to consider the totality of the circumstances and Strong's allegations.

Plaintiff provides specific facts tending to show that the discriminatory environment at GRVC was severe and pervasive. Among other things, Plaintiff alleges that his "superior officers," Cort, Gustuve, Stokes, and Harper, were aware of his disabilities and light-duty status (SAC ¶ 20; *see also id.* ¶¶ 78–79, 103, 108, 147); that he was given "the most undesirable posts" involving "high classification and assaultive inmates" after complaining of his need for reasonable accommodations (*id.* ¶¶ 80, 181); that at multiple times, supervising officers such as Gustuve put him in situations where his light-duty accommodations led to unreasonable risk of physical harm (*see, e.g, id.* ¶¶ 108–110); and that in 2024, Harper denied all of his time-due submissions for overtime, stated that all of Strong's doctor's appointments must be scheduled on "pass days," and then said that Strong would have the "worst posts guaranteed" (*id.* ¶ 147), which caused Strong "mental distress to the point of resignation." (*Id.* ¶ 148).

Those allegations suggest that supervising officers were aware of Strong's medical needs, yet subjected him to "disproportionality burdensome work assignments" that caused both physical and psychological harm. *See Blumstein-Torrella v. New York City Dep't of Educ.*, No. 19 Civ. 3492 (ALC) (VF), 2024 WL 4973393, at *15 (S.D.N.Y. Sept. 7, 2024) (explaining that allegations of "heavier workload" that subjected plaintiff to "disproportionately burdensome work assignments" may support hostile work environment claims (citations omitted)), *R&R adopted,* 2024 WL 4835669 (S.D.N.Y. Nov. 20, 2024); *Dipinto v. Westchester*

*Cnty.*, No. 18 Civ. 793 (PMH), 2020 WL 6135902, at *6 (S.D.N.Y. Oct. 19, 2020) (allegations that supervisor directed plaintiff to work permanently in "the most physically demanding position" and stated that he would "make [Plaintiff's] life hell until he quits" supported hostile work environment claim); *Watts v. New York City Police Dep't*, 724 F. Supp. 99, 104 n.3 (S.D.N.Y. 1989) (conduct causing "psychological injury" actionable under hostile environment theory).

In addition, Strong alleges that despite his employer being aware of his mental health issues and panic attacks since 2022 (*see* SAC ¶¶ 67–68), when he had panic attacks in 2023 and called for medical assistance, Cort (GRVC's assistant commissioner) and Harper "ordered all staff not to respond and to deny him any assistance for the rest of his tour," and Plaintiff "remained. . . stranded, imprisoned, [and] denied of medical attention, [with] no break and no meal" for the rest of his tour. (*Id.* ¶¶ 155–56). Similarly, Plaintiff alleges that Molina, Cort, and Rivera "penalized him with chronic discipline for the failure to timely recover from injuries and illnesses but was forced, by same, to work full-duty posts and to work extensive overtime, double-tours and more." (*Id.* ¶ 85). As alleged, this conduct by supervising employees at GRVC put Strong at physical risk, as well as clear psychological harm in the form of diagnosed anxiety disorder and "overreactive physical state." (*Id.* ¶ 160).

Lastly, the suspensions in 2023 stemming from failure to obey orders are sufficiently alleged to be "improper" or "unfair" disciplinary actions, as Strong

alleges that he refused to obey orders because of his disability accommodations and light-duty status, and that Defendants' assignments were unlawful. *See Blumstein-Torrella*, 2024 WL 4973393, at *15 (noting that allegations of "improper, unfair, or false discipline" where the "disciplinary action was connected to Plaintiff's protected characteristics" may show a hostile work environment (cleaned up)); *Kirkland-Hudson*, 665 F. Supp. 3d at 466 (plaintiff's allegations of disproportionate workload and being subject to "unfair discipline" on account of her race sufficiently stated hostile work environment claim). Considering the totality of the circumstances, Strong's complaint alleges sufficient facts to suggest that Defendants' conduct was not merely "episodic" or "mild" but was instead sufficiently "severe" and "pervasive" that a "reasonable employee would find the conditions of [his] employment altered for the worse." *Terry*, 336 F.3d at 147–48 (citations and emphasis omitted).

The allegations related to hostile work environment may also be imputed to Strong's employer. "Where the individual committing the harassment is the plaintiff[']s supervisor, the conduct is automatically imputed to the employer." *France v. Touro Coll.*, No. 14 Civ. 4613 (NGG) (CLP), 2016 WL 1105400, at *12 (E.D.N.Y. Feb. 16, 2016), *R&R adopted*, 2016 WL 1117459 (E.D.N.Y. Mar. 21, 2016). Here, all of the violative conduct stemmed from Plaintiff's direct supervisors and upper-management, not coworkers. Plaintiff thus satisfies his pleading burden for a hostile work environment claim under the ADA.

**4. Claims Against the Individual Defendants**

The ADA does not provide for individual liability. *Gomez v. New York City Police Dep't*, 191 F. Supp. 3d 293, 302–03 (S.D.N.Y. 2016); *see also Spiegel v. Schulmann*, 604 F.3d 72, 79 (2d Cir. 2010) (retaliation). This is true with regard to claims for disability discrimination, retaliation, and hostile work environment alike. *Garcia v. Kings Cnty. Hosp. Cent.*, No. 16 Civ. 3151 (ER), 2018 WL 389212, at *3 (S.D.N.Y. Jan. 11, 2018); *Blair v. L.I. Child & Fam. Dev. Servs., Inc.*, No. 16 Civ. 1591 (JFB) (SIL), 2017 WL 722112, at *8 (E.D.N.Y. Jan. 31, 2017), *R&R adopted*, 2017 WL 728231 (E.D.N.Y. Feb. 21, 2017). Although Defendants seek dismissal on this ground only in relation to Strong's retaliation claim (Mot. at 19), the Court recommends that all of Plaintiff's ADA claims be dismissed as against all individual Defendants.

By contrast, the NYSHRL and NYCHRL do allow plaintiffs to recover against individual defendants for disability discrimination claims. *Nezaj v. PS450 Bar & Rest.*, 719 F. Supp. 3d 318, 329–30 (S.D.N.Y. 2024). Aside from arguing for dismissal of Plaintiff's NYSHRL and NYCHRL as against all Defendants, Defendants make no argument that those claims are defectively pled as to any particular individual Defendant or Defendants. (*See generally* Mot.). Therefore, the Court recommends that the motion to dismiss the NYSHRL and NYCHRL claims be denied in its entirety.

In sum, then, the Court recommends (1) that Defendants' motion to dismiss Plaintiff's claims for discrimination, retaliation, and hostile work environment under the ADA be denied as to the City and granted as to the individual Defendants, and (2) that Defendants' motion to dismiss Plaintiff's claims for discrimination under the NYSHRL and NYCHRL be denied as to all Defendants.

**C. New York Civil Service Law § 75-b**

Plaintiff also asserts a claim for retaliation under New York Civil Service Law § 75-b ("Section 75-b"). (SAC ¶¶ 245–48). Section 75-b forbids public employers from taking adverse actions because the employee

> discloses to a governmental body information (i) regarding a violation of a law, rule or regulation which violation creates and presents a substantial and specific danger to the public health or safety; or (ii) which the employee reasonably believes to be true and reasonably believes constitutes an improper governmental action.

N.Y. Civ. Serv. L. § 75-b(2)(a).

As Defendants note (Mot. at 19), Section 75-b does not allow for individual liability. *Verdi v. City of New York*, 306 F. Supp. 3d 532, 549 (S.D.N.Y. 2018). Therefore, the Court recommends dismissing Plaintiff's Section 75-b as against the individual Defendants.

Defendants also argue that Plaintiff's Section 75-b claim must be dismissed because Plaintiff was subject to a collective bargaining agreement ("CBA") and, as such, was first required to exhaust his contractual remedies under the CBA before filing suit. (Mot. at 21 (citing, *inter alia*, *Healy v. City of New York Dep't of*

*Sanitation,* No. 04 Civ. 7344 (DC), 2006 WL 3457702, at *6 (S.D.N.Y. Nov. 22, 2006) ("Only those employees not party to a collective bargaining agreement may file suit in federal court to enforce their rights under § 75-b."), *aff'd and remanded,* 286 F. App'x 744 (2d Cir. 2008)). Strong acknowledges that he was subject to a CBA (SAC ¶ 225), but does not allege that he first sought to address his grievances through his union under the CBA.

However, to the extent Defendants argue that the mere existence of a collective bargaining agreement that applies to Strong forecloses his ability to recover under Section 75-b, they are mistaken. Section 75-b makes clear that the exhaustion requirement applies only where the collective bargaining agreement "contains provisions preventing an employer from taking adverse personnel actions" and also "contains a final and binding arbitration provision to resolve alleged violations of such provisions of the agreement." N.Y. Civ. Serv. L. § 75-b(3)(b). "Where an employee is not subject to" such provisions, "the employee may commence an action in a court of competent jurisdiction under" relevant provisions of the New York Labor Law. N.Y. Civ. Serv. L. § 75-b(3)(c).

Courts in the Second Circuit enforce the statute's plain language. The Second Circuit has stated: "As a predicate to suing under the [Civil Service Law], an employee must exhaust his remedies under an applicable CBA *when it contains (1) a clause preventing an employer from taking adverse personnel actions and (2) an arbitration provision*." *Specht v. City of New York*, 15 F.4th 594, 605 (2d Cir. 2021)

(emphasis added); *see also Verdi*, 306 F. Supp. 3d at 550 (denying motion to dismiss Section 75-b claim upon concluding that, under the CBA, "Plaintiff is not required to exhaust this remedy because it does not include final and binding arbitration, a necessary element to the exhaustion requirement of Section 75–b"). The cases cited by Defendants are not to the contrary. In fact, both acknowledge the same rule and dismiss Section 75-b claims because the CBA's at issue contained the necessary provisions—not simply because there was a CBA. *See Krzesaj v. New York City Dep't of Educ.*, No. 16 Civ. 2929 (ER), 2017 WL 1031278, at *12 (S.D.N.Y. Mar. 15, 2017) ("The Court finds that because Plaintiff is subject to the CBA, which contains an applicable grievance procedure, he may not sue the DOE directly but, instead is bound to follow the grievance procedure outlined in the CBA and exhaust all administrative remedies prior to seeking judicial relief." (citation omitted)); *Healy*, 2006 WL 3457702 at *6 (dismissing Section 75-b claim where "the collective bargaining agreement requires all employees to grieve and arbitrate any alleged adverse employment actions").

Defendants do not provide the Court with the relevant CBA, describe its contents, or even contend that it contains the provisions necessary for them to invoke Section 75-b(3)(b)'s exhaustion requirement. And the SAC merely alleges the existence of a CBA, not its contents. (SAC ¶ 225). As a result, the Court cannot conclude that Strong was required to exhaust any contractual remedies afforded by the CBA prior to filing this suit.

For that reason, the Court recommends denying Defendants' motion to dismiss Plaintiff's Section 75-b retaliation claim against the City (Count XVII), while recognizing that a collective bargaining agreement may later foreclose Plaintiff's claim. As noted, the Court also recommends dismissing Count XVII against the individual Defendants.

**D. "Unjust Enrichment" Statutory Claims**

Plaintiff next asserts causes of action for "unjust enrichment in violation of" three statutes: New York General Municipal Law § 207-c (SAC ¶¶ 217–23); New York Labor Law § 193 (*id.* ¶¶ 234–38); and New York Civil Service Law § 75 (*id.* ¶¶ 239–44). It is unclear what Strong means in characterizing these three causes of action as "unjust enrichment" claims. Analyzing the claims as if they asserted a common law claim for unjust enrichment, Defendants argue that each claim should be dismissed because Plaintiff fails to allege that Defendants "retained any unjust benefit from Plaintiff" and also because the claims are "duplicative of Plaintiff's other claims." (Mot. at 21–22).

The Court finds Defendants' common law analysis overly simplistic, to the extent it is relevant at all. Despite including the phrase "unjust enrichment" in the heading, Strong's substantive allegations, in each case, refer to provisions of the statute in question and assert that Defendants' conduct violated the statute. (*See, e.g.*, SAC ¶¶ 222 (alleging that Defendants "deprived Plaintiff of his statutory rights"), 236 (alleging that Defendants' conduct was "prohibited pursuant to [NYLL

§ 193]"), 244 (alleging that Defendants "fail[ed] to abide by [the] statu[t]e")). Particularly given the Court's duty to read Strong's complaint liberally, *McPherson*, 174 F.3d at 280, the Court construes each cause of action as alleging a violation of the statute cited, and proceeds to analyze whether Plaintiff has stated a proper claim for relief under the statute.

**1. New York General Municipal Law § 207-c**

New York General Municipal Law § 207-c ("Section 207-c") allows certain corrections officers (among others) "who [are] injured in the performance of his or her duties or who [are] taken sick as a result of the performance of his or her duties" to be "paid by the municipality by which he or she is employed the full amount of his or her regular salary or wages until his or her disability arising therefrom has ceased."[18] N.Y. Gen. Mun. L. § 207-c. Section 207-c "specifically invests municipalities with discretion to determine employee eligibility for benefits in the first instance." *Schenectady Cnty. Sheriff's Benev. Ass'n v. McEvoy*, 124 A.D.2d 911, 912, 508 N.Y.S.2d 663, 665 (3d Dep't 1986); *see also* N.Y. Comp. Op. No. 92-15 (1992) (available at https://www.osc.ny.gov/legal-opinions/opinion-92-15) ("Eligibility for benefits under section 207-c must be determined, in the first instance, by the municipality.").

---

[18] The Court notes that it is unclear whether Section 207-c covers Strong, a correction officer employed by the City of New York. (*See* SAC ¶ 7). Nonetheless, the Court assumes that the statute applies for purposes of this analysis.

Strong seems to contend that because he was injured in the line of duty in 2020 and 2023, Section 207-c prohibited Defendants from suspending him without pay until he had been cleared by a physician to return to full-duty labor. (*See* SAC ¶¶ 44, 97, 219–21). However, Strong does not allege that he sought or applied for any award of Section 207-c benefits in connection with his work-related injuries. (*See* SAC ¶¶ 217–23). He does state that he filed "for workers compensation" in relation to the 2020 incident (*id.* ¶¶ 44–48), but "[w]orkers compensation benefits, where provided, are awarded in addition to" Section 207-c benefits. *Diegelman v. City of Buffalo*, 28 N.Y.3d 231, 235 n.1, 43 N.Y.S.3d 803, 806 n.1, 66 N.E.3d 673, 676 n.1 (2016) (cleaned up). At this juncture, without any prior review or determination by New York City, the Court has no ability to compel the issuance of Section 207-c benefits to Strong. *See Olivier v. Cnty. of Rockland*, 260 A.D.2d 482, 483, 688 N.Y.S.2d 580, 580 (2d Dep't 1999) (reversing lower court's grant of mandamus awarding 207-c benefits where corrections officer had applied administratively for benefits and then brought Article 78 proceeding "before any determination on his application"); *Massi v. Flynn*, 6 Misc. 3d 1001(A), 800 N.Y.S.2d 349, 2004 WL 2973966, at *5 (Sup. Ct. Westchester Cnty. 2004) (finding that court was "without the power to issue a mandamus compelling respondents to award petitioner his GML § 207-c benefits," despite petitioner's claim that he had been

wrongfully suspended, where no administrative hearing had yet been held on his application for benefits).[19] The Court thus recommends dismissal of Count XII.

**2. New York Labor Law § 193**

New York Labor Law § 193 ("Section 193") provides that "[n]o employer shall make any deduction from the wages of an employee." N.Y.L.L. § 193. Strong alleges, albeit opaquely, that the statute was violated when the City, Molina, Cort, Rivera, and Harper "caused the disruption [of] wages through the unauthorized termination o[f] his employment privileges." (SAC ¶¶ 236–37).

State and federal courts in New York regularly entertain claims brought under Section 193. *See, e.g.*, *Denhaese v. Buffalo Spine Surgery, PLLC*, 144 A.D.3d 1519, 1520, 40 N.Y.S.3d 851, 852 (4th Dep't 2016); *Lujan v. Cabana Mgmt., Inc.*, No. 10 Civ. 755 ILG, 2010 WL 5391462, at *4 (E.D.N.Y. Dec. 22, 2010). However, Section 193 is part of Article 6 of the Labor Law, and government agencies are specifically excluded from the definition of "employer" as used in that article. N.Y.L.L. § 190(3) ("The term 'employer' shall not include a government agency.").

Because the City and its employees are excluded from the scope of Section 193, Strong's Section 193 claim cannot stand. *See Montero v. City of New York*, No. 25 Civ. 2482 (JLR), 2026 WL 866851, at *4 (S.D.N.Y. Mar. 30, 2026) (dismissing

---

[19] The Court also has insufficient knowledge about whether the relevant collective bargaining agreement might impact Strong's entitlement to Section 207-c benefits, which are "a mandatory subject of bargaining." *City of Watertown v. State of N.Y. Pub. Emp. Rels. Bd.*, 95 N.Y.2d 73, 79, 733 N.E.2d 171, 174 (2000).

Section 193 claims against City and employees). The Court recommends dismissing Count XV.

**3. New York Civil Service Law § 75**

New York Civil Service Law § 75 ("Section 75") "outlines the procedures to be followed in disciplinary proceedings against public employees." *Conklin v. Town of Ramapo*, 214 A.D.2d 639, 640, 624 N.Y.S.2d 646, 647 (2d Dep't 1995). The statute protects certain civil service employees from being "removed or otherwise subjected to any disciplinary penalty . . . except for incompetency or misconduct shown after a hearing upon stated charges pursuant to this section." N.Y. Civ. Serv. L. § 75(1). Section 75 establishes that no such disciplinary proceeding or removal "shall be commenced more than eighteen months after the occurrence of the alleged incompetency or misconduct." *Id.* § 75(4).

Under Civil Service Law § 76, appeals from an adverse determination, including a "suspension without pay," imposed pursuant to Section 75 may be taken "either by an application to the state or municipal commission having jurisdiction, or by an application to the court" in accordance with C.P.L.R. Article 78. N.Y. Civ. Serv. L. § 76(1). An Article 78 proceeding "must be brought 'within four months after the determination to be reviewed becomes final and binding upon the petitioner.'" *Javier v. New York City Dep't of Bldgs.*, 127 A.D.3d 548, 548, 7 N.Y.S.3d 123, 123 (1st Dep't 2015) (quoting N.Y. C.P.L.R. § 217(1)).

Plaintiff alleges that "several summary suspensions and disciplinary actions" against him "were not commence[d] prior to . . . the statute of limitation[s] pursuant to New York Civil Service Law § 75(4)." (SAC ¶ 242). Plaintiff identifies three specific instances where Defendants failed to abide by the 18-month period prescribed by Section 75: a suspension issued for an "unauthorized out of residence violation"(*id.* ¶¶ 125–26); his suspension for negligence in the death of Anibal Carrasquillo (*id.* ¶¶ 127–28); and one of his suspensions for refusing to comply with orders (*id.* ¶¶ 129–30). He alleges that the City "failed to return" 42 days' worth of salary for those suspensions allegedly not prosecuted within the statute of limitations and seeks the return of those lost wages. (*Id.* ¶¶ 124, 243).

The fundamental flaw in Plaintiff's claim under Section 75 is that this Court does not sit as an Article 78 court. Section 76(1) of the Civil Service Law is clear: If Strong wished to seek judicial review of these suspensions without pay on the ground that no disciplinary proceeding was commenced within 18 months as required by Section 75(4), the appropriate remedy was for Strong to commence an Article 78 proceeding in state court. *See* N.Y. Civ. Serv. L. § 76(1); *Rodriguez v. Cnty. of Albany*, 105 A.D.3d 1124, 1127, 962 N.Y.S.2d 801, 802 (3d Dep't 2013) (dismissing disciplinary charges against Sheriff's Office employee after he commenced proceeding in state court pursuant to Article 78 seeking dismissal of the charges as untimely under Section 75(4)).

The Second Circuit has not yet decided whether the federal courts lack jurisdiction over claims brought pursuant to Article 78. *Carver v. Nassau Cnty. Interim Fin. Auth.*, 730 F.3d 150, 155 (2d Cir. 2013) (declining to reach question, while "recogniz[ing] that Article 78 reflects a state preference for a state mode of procedure"). But "'[t]he overwhelming majority of district courts confronted with the question of whether to exercise supplemental jurisdiction over Article 78 claims have found that they are without power to do so or have declined to do so.'" *Bens BBQ, Inc. v. Cnty. of Suffolk*, No. 19 Civ. 3584 (SJF) (ARL), 2020 WL 3790349, at *2 (E.D.N.Y. July 7, 2020) (quoting *E. End Eruv Ass'n, Inc. v. Town of Southampton*, No. 13 Civ. 4810, 2014 WL 4826226, at *16 (E.D.N.Y. Sept. 24, 2014)); *see also Detering v. City of New York*, No. 25 Civ. 2100 (KPF), 2026 WL 2209962, at *6 (S.D.N.Y. July 30, 2026) ("'District Courts in this Circuit have consistently declined to exercise supplemental jurisdiction over Article 78 claims.'" (quoting *Furk* v. *Orange-Ulster BOCES*, No. 15 Civ. 6594 (NSR), 2016 WL 6560408, at *6 (S.D.N.Y. Nov. 2, 2016))); *De Jesus v. City of New York*, No. 10 Civ. 9400 (GBD), 2012 WL 569176, at *4 (S.D.N.Y. Feb. 21, 2012) ("Recognizing state courts' exclusive jurisdiction over Article 78, courts within this circuit have consistently dec[l]ined to exercise supplemental jurisdiction over Article 78 claims.").

"This is the case even in actions with surviving federal claims." *Detering*, 2026 WL 2209962 at *6 (citing, *inter alia*, *Birmingham* v. *Ogden*, 70 F. Supp. 2d 353, 372 (S.D.N.Y. 1999) ("[F]ederal courts are loath to exercise jurisdiction over

Article 78 claims[ ] [e]ven where a plaintiff has one or more federal claims still alive[.]" (alteration in original))); *see also Flanagan v. New York City Dep't of Educ.*, No. 13 Civ. 8456 (LAK) (JCF), 2015 WL 11142630, at *17 (S.D.N.Y. Aug. 21, 2015) (noting that courts have discretion to decline to exercise supplemental jurisdiction if there are "compelling reasons for declining jurisdiction," 28 U.S.C. § 1367(c)(4), and that "[t]he vast majority of New York federal district courts have held that '[t]he very nature of an Article 78 proceeding presents such compelling reasons'" (quoting *National Fuel Gas Supply Corp. v. Town of Wales*, 904 F. Supp. 2d 324, 336 (W.D.N.Y. 2012) (alterations in original))).

Here, the SAC alleges subject matter jurisdiction over Strong's state law claims solely on the basis of supplemental jurisdiction pursuant to 28 U.S.C. § 1367. (SAC ¶ 4). Strong does not plead that he sought to bring a prior Article 78 hearing with respect to his Section 75 claim and "pleads nothing to indicate" that those claims "belong anywhere except in an Article 78 proceeding." *Bowman v. New York State Housing & Community Renewal*, No. 18 Civ. 11596 (ER), 2020 WL 1233701, at *10 (S.D.N.Y. March 13, 2020). Following the overwhelming majority of case law in this Circuit, the undersigned recommends that the Court decline to exercise supplemental jurisdiction and that Count XVI be dismissed.

**E. Overtime and Meal Break Claims**

Strong also brings claims under Sections 162 and 168 of the New York Labor Law. Defendants argue that Plaintiff's claims under these statutes must be

dismissed because "neither provision provides for a private right [of] action" and both are "enforced exclusively by the New York Department of Labor." (Mot. at 22). The Court addresses each statute in turn.

**1. New York Labor Law § 162**

Strong asserts a cause of action under N.Y. Labor Law § 162 ("Section 162"), contending that he was improperly denied meal breaks in violation of the statute. (SAC ¶¶ 224–27). However, "courts in this Circuit have consistently found that such claims fail 'as a matter of law because there is no private right of action under NYLL § 162.'" *Kim v. Kini LIC Corp.*, 806 F. Supp. 3d 277, 295 (E.D.N.Y. 2025) (quoting *Sun v. Sushi Fussion Express, Inc.*, No. 16 Civ. 4840 (RPK) (LB), 2022 WL 2466848, at *9 (E.D.N.Y. Mar. 8, 2022): *see also Chen v. Shanghai Cafe Deluxe, Inc.*, No. 16 Civ. 4790 (VF), 2023 WL 2401376, at *8 (S.D.N.Y. Mar. 8, 2023) ("[T]here is no private right of action for violations of N.Y. Labor Law § 162."); *Hill*, 136 F. Supp. 3d at 350–51 (collecting cases). Plaintiff's Section 162 claim thus fails as a matter of law. The Court therefore recommends that Count XIII be dismissed.

**2. New York Labor Law § 168**

Strong also brings a claim of "unlawful forced overtime" in violation of New York Labor Law § 186 ("Section 168"). (SAC ¶¶ 228–33).

Section 168 generally prohibits certain classes of public employees, including corrections officers, from working more than eight hours a day, 40 hours a week, and six days a week, subject to certain exceptions. *See* N.Y.L.L. §168. Although

Defendants argue that "[c]ourts have consistently held that individual employees cannot sue under" both Section 162 and 168, the only case they cite in support of that proposition is *Hill v. City of New York*, *supra*. (Mot. at 22). *Hill*, however, held only that "there is no private right of action to enforce under § 162." 136 F. Supp. 3d at 350–51. It did not address Section 168. Based on the Court's research, no court has specifically addressed whether Section 168 creates a private right of action. Indeed, there is very little New York state authority, and no federal authority, discussing the statute in any respect.

However, in cases dating back to the 1940s, New York courts have held that employees "could not under that section recover compensation for . . . overtime services." *Marriott v. State*, 196 Misc. 454, 456, 56 N.Y.S.2d 584, 586 (Ct. Cl. 1945); *see also McMahon v. State*, 178 Misc. 865, 868, 36 N.Y.S.2d 699, 703 (Ct. Cl. 1942) (reasoning that Section 168 limits employers' authority to contract for overtime services and hence prohibits court from requiring payment of overtime). That authority, coupled with the absence of any reported cases in the nearly 90 years that the statute has been on the books, *see McMahon*, 36 N.Y.S.2d at 700, in which an employee has successfully invoked the law in a civil suit, strongly suggest that New York courts would not regard Section 168 as conferring a private right of actions. *See Wells Fargo Bank, N.A. v. Vanderkamp*, 45 Misc.3d 1213(A), 5 N.Y.S.3d 331 (table), 2014 WL 5642261, at *5 (Sup. Ct. Suffolk Cnty. 2014)

(declining to find private right of action where party asserting claim "ha[d] not cited to a single case where such a private right has been recognized").

Moreover, Section 168's application is explicitly limited to certain "persons employed by the state." N.Y.L.L. § 168(1). That includes, as relevant here, "guard service personnel . . . subject to the jurisdiction . . . of the department of corrections and community supervision"—the state corrections entity that is separate and distinct from DOC, the New York City agency that employed Strong. *See id.*; Department of Corrections and Community Supervision Home Page, https://doccs.ny.gov, (last visited July 31, 2026). The statutory language thus implies that Strong, as an employee of the City, is not covered by Section 168. That conclusion is reinforced by the fact that the few New York state cases discussing Section 168 relate exclusively to disputes involving state employees or the state itself. *See, e.g.*, *McMenemy v. Goord*, 273 A.D.2d 665, 666, 709 N.Y.S.2d 683, 683 (3d Dep't 2000); *Marriott*, 56 N.Y.S.2d at 585; *McMahon*, 36 N.Y.S.2d at 704.

The Court therefore recommends dismissal of Strong's Section 168 cause of action (Count XIV).

**F. Defamation and Libel Claim**

Finally, the Court addresses Plaintiff's claim for defamation and libel. (SAC ¶¶ 254–56). Strong generally claims that Defendants "wrote false statements in their suspensions, documents, infractions[,] and other writings with malice, to

disseminate false personal and professional information . . . with knowledge or [] reckless disregard of its falsity." (*Id.* ¶ 255).

To state a defamation claim in New York, Plaintiff must provide factual allegations establishing: "(1) a false statement that is (2) published to a third party (3) without privilege or authorization, and that (4) causes harm, unless the statement is one of the types of publications actionable regardless of harm." *Greer v. Fox News Media*, No. 22-1970-CV, 2023 WL 2671796, at *2 (2d Cir. Mar. 29, 2023) (citation omitted). The statute of limitations for slander or libel is one year from the date of the defamatory statement. N.Y. C.P.L.R. § 215(3).[20]

Defendants argue that "the last date on which Plaintiff alleges a defamatory statement could have been made is the 'disciplinary charges' referenced by Plaintiff that he received on July 30, 2023." (Mot. at 23 (citing SAC ¶ 116)). Because Plaintiff commenced this lawsuit on March 27, 2024, Defendants contend, his

[20] There is some inconsistency on the applicable statute of limitations for a defamation claim against the City and its employees. Certain federal and state courts have applied C.P.L.R. § 215(3) to defamation claims against municipalities and their employees. *See, e.g.*, *Sarkar v. City of New York*, No. 24-1219, 2025 WL 1793733, at *2 (2d Cir. June 30, 2025) (one-year statute of limitations to defamation claims against the City and employees); *Elio v. Putnam Cnty. New York*, 83 Misc. 3d 1256(A), 214 N.Y.S.3d 923 (table) at *10 (N.Y. Sup. Ct. 2024) (one-year statute of limitations for defamation claim against Putnam County and its employees). Others have applied General Municipal Law § 50-i, which sets a one-year and ninety-day statute of limitations for actions "against a city [or] county . . . for personal injury . . . or damage to real or personal property alleged to have been sustained by . . . the negligence or wrongful act of such city [or] county . . . or of any officer, agent, or employee thereof." N.Y. Gen. Mun. L. § 50-i(1); *see Rachlin v. City of New York*, No. 24 Civ. 2626 (FB) (SDE), 2026 WL 2085469, at *9 (E.D.N.Y. July 20, 2026) (one-year and ninety-day statute of limitations to defamation claims against City and City police officers); *Covert v. Westchester Cnty.*, 82 Misc. 3d 1254(A), 209 N.Y.S.3d 924 (table), 2024 WL 2453965 at *3–4 (N.Y. Sup. Ct. 2024) (one-year and ninety-day statute of limitations for defamation claim against Westchester County employee). However, the Court need not decide which limitations period applies here, as the relevant defamatory statements and the Court's analysis are the same under both periods.

"defamation claim is time-barred by the one-year statute of limitations." (*Id.*). But Defendants have the wrong operative date of the allegedly defamatory statement. Plaintiff alleges, in the very paragraph cited by Defendants, that he received the disciplinary charges on September 18, 2023, and that those charges were dated August 29, 2023. (SAC ¶ 116). July 30, 2023 was the date of the underlying incident. (*Id.*). And in any event, even if July 30, 2023 were the correct date, the filing of this action on March 27, 2024 was well within the one-year period.

Accordingly, Defendants' argument that Strong's entire defamation claim is time-barred must be rejected. However, any defamatory statements made before March 27, 2023 would be outside of the applicable one-year statute of limitations. *See Bank of Montreal v. Optionable, Inc.*, No. 09 Civ. 7557 (GBD), 2012 WL 3686294, at *3 (S.D.N.Y. Aug. 24, 2012) (analyzing limitations period statement-by-statement for two allegedly defamatory statements).

In reviewing the SAC, the Court identifies two allegedly defamatory statements made by Defendants within the applicable limitations period. First, Paragraph 74 of the SAC alleges that on May 8, 2023, Strong "received a formal disciplinary complaint . . . that wrongfully charged him [] with negligence in the death of [inmate] Anibal Carrasquillo." Second, Paragraph 116 alleges that Strong received a departmental complaint on September 18, 2023, that "Plaintiff was in violation of eight (8) charges for failure to obey orders to work the full-duty post."

However, neither of these statements can support a claim for defamation or libel, as Plaintiff does not allege that either statement was "published to a third party." *Greer*, 2023 WL 2671796, at *2. "Words are 'published' within the meaning of the law of libel when they are read by someone other than the person libeled and the person making the charges." *Pub. Rels. Soc. of Am., Inc. v. Rd. Runner High Speed Online*, 8 Misc. 3d 820, 823, 799 N.Y.S.2d 847, 850 (Sup. Ct. N.Y. Cnty. 2005); *see also Jain v. Sec. Indus. Fin. & Markets Ass'n*, No. 08 Civ. 6463 (DAB), 2009 WL 3166684, at *7 (S.D.N.Y. Sept. 28, 2009) (applying same standard to defamation claim).

Strong does not allege that the statements at issue were read or viewed by anyone either than Solange Grey, the "person making the charges," and himself, the "person libeled." The defamatory statements were therefore not published within the meaning of New York law. *See Jain*, 2009 WL 3166684, at *7 (finding "as a matter of law that where a Defendant . . . sends a defamatory statement only to the Plaintiff and the co-Defendant that originally supplied the statement to the Defendant, that statement has not been 'published' by the Defendant under New York defamation law"). Accordingly, the Court recommends that Count XIX also be dismissed.[21]

[21] Strong's defamation cause of action also notes that Defendants "wrote false statements in their suspensions." (SAC ¶ 255). However, in the allegations referring to his 2023 suspensions (which would be the only ones within either statute of limitations), Strong only states that he was "suspended," but does not identify any written statements accompanying the suspensions, or what he alleges to be false. (*See, e.g.*, *id.* ¶¶ 87, 105, 114). The Court therefore does not consider these suspensions in its analysis. *See Frascatore v. Blake*, 344 F. Supp. 3d 481, 499 (S.D.N.Y. 2018) (dismissing defamation claim where plaintiff "failed to plead facts demonstrating how [a] statement

## CONCLUSION

For the foregoing reasons, the undersigned respectfully recommends that Defendants' motion to dismiss be **GRANTED IN PART and DENIED IN PART.**

DATED: New York, New York
August 6, 2026

The Honorable Gary Stein
United States Magistrate Judge

## NOTICE OF PROCEDURE FOR FILING OBJECTIONS TO THIS REPORT AND RECOMMENDATION

Pursuant to 28 U.S.C. Section 636(b)(1) and Fed. R. Civ. P. 72(b), the parties shall have fourteen days, inclusive of weekends and holidays, from service of this Report and Recommendation to file written objections thereto. *See also* Fed. R. Civ. 6(a), (b), and (d). Any such objections shall be filed with the Clerk of Court. Any request for an extension of time to file objections must be directed to the Honorable John P. Cronan. A failure to file timely objections will preclude appellate review. *See Thomas v. Arn*, 474 U.S. 140 (1985); *Wagner & Wagner, LLP v. Atkinson, Haskins, Nellis, Brittingham, Gladd & Carwile, P.C.*, 596 F.3d 84, 92 (2d Cir. 2010).

was false"). In any event, Strong also does not allege that the suspensions were published to third parties.